Filed 2/13/14  P. v. Shick CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057985 |
| v. | (Super.Ct.No. RIF1202280) |
| ROGER ALLEN SHICK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.
Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for
Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H.
Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

In this appeal, defendant Roger Allen Shick contends his convictions for burglary of an inhabited dwelling and for making criminal threats must be reversed for insufficient evidence. Defendant argues the People did not introduce substantial evidence that he had the intent of making a criminal threat when he entered the victim's home or when he entered the victim's bedroom because the homeowner granted him unlimited access to the entire residence, and that the People failed to establish that the victim suffered sustained fear from his threats. We conclude the record does contain substantial evidence that defendant had the intent of threatening his victim when he entered her home or her room, and that the victim did suffer sustained fear when defendant pointed a gun at her head. Therefore we affirm the judgment.

## FACTS

The victim lived in her parents' Mira Loma home with her parents, children, sister, and nephew. The victim had known defendant as a family friend for over 20 years through her sister, with whom defendant had an off and on romantic relationship and with whom defendant remained best friends. Defendant visited the victim's house almost daily to pay brief visits with the victim's sister and would simply walk into the house uninvited. Some time before the incident, one of defendant's friends hired the victim to perform paralegal work and paid her $250 to file eviction papers. When the victim told defendant that the court had rejected the paperwork she filed, defendant went to the victim's home and made idle threats to her about it.

Around 10:30 on the morning of April 19, 2012, the victim was in her bedroom sleeping while her mother watched television in the living room. Defendant entered through the front door of the house without knocking, as was his habit. Assuming defendant was there to visit her other daughter, the victim's mother told defendant that she was not home. Defendant told her he was there to see the victim, and mentioned something about talking to her about the eviction. The mother told defendant that the victim was sleeping but told him to go back to the victim's bedroom. Defendant then walked from the living room back to the victim's bedroom.

The victim awoke feeling something pressed against her temple and heard a clicking noise. She looked up and saw someone hovering over her, saw a gun pointed at her head, and heard the person say, "I'm going to F'ing kill you." The victim instantly recognized the voice as defendant's and saw that it was him hovering over her. She was "really scared" thinking those might be her last moments and believed defendant meant what he said because he had a gun. The victim then woke up, swatted away defendant's hand, sprang from the bed, and ran down the hallway to the living room. From the time the victim awoke to the time she ran down the hallway to the living room was no more than a minute.

From the living room, the victim's mother heard the victim yell, "What the fuck," but thought nothing of it at first. As the victim ran into the living room and jumped onto the couch, she yelled out to her mother, "He's got a gun," "he cocked it," and "he said he's going to F'ing kill me." The victim heard defendant say, "It doesn't matter anyways because the cops are looking for me, and I should have taken care of the eviction." From

3

the look on the victim's face, the mother could tell that her daughter "looked scared." When defendant calmly walked into the living room, the victim's mother asked him, "You brought a gun into my home?" and "Is it true? Do you have a gun?" Defendant did not answer her directly, but instead asked if she knew that some 20 years earlier the victim sent two men to rob him at gunpoint. Defendant then said he was "sorry for causing trouble," turned and calmly walked out the front door. As he walked out, a security camera captured images of defendant walking away with a gun in his hand. The victim then called 911.

Defendant did not have the victim's permission to enter the house that morning. Although defendant visited the victim's home the day before, the victim testified she had no idea he would be coming over that day. Both the victim and her mother testified they would not have let defendant into the house or into the victim's bedroom had they known he would point a gun at her.

A jury rendered a true finding that the residence was occupied by another person when defendant entered the victim's home and bedroom, and further found defendant guilty of first degree burglary. (Pen. Code,[1] §§ 459, 667.5, subd. (c)(21), count 1.) The jury also found defendant guilty of making criminal threats. (§ 422, count 2.) Defendant then admitted to suffering five prior prison terms. (§ 667.5, subd. (b).) Thereafter, the trial court sentenced defendant to state prison for 12 years. This appeal timely followed.

---

[1] All additional undesignated statutory references are to the Penal Code.

4

DISCUSSION

I

DEFENDANT'S BURGLARY CONVICTION IS SUPPORTED BY

SUBSTANTIAL EVIDENCE

With respect to his burglary conviction, defendant contends he cannot be found guilty because he had "full, unlimited access to the [victim's] house" and "approval" to enter all separate rooms found within, and that the People introduced no evidence that he had the intent to threaten the victim when he first entered the home or that he formed such an intent after entering the home but before entering the victim's bedroom. We disagree.

"'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The

5

conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

In relevant part, section 459 provides that "[e]very person who enters any house, room, apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." "[B]urglary may be committed not only by an entry into a home with the requisite felonious intent, but also by an entry (with the requisite felonious intent) from within the home into a bedroom inside the home." (*People v. Taylor* (2010) 48 Cal.4th 574, 627 (*Taylor*), citing *People v. Sparks* (2002) 28 Cal.4th 71, 86–88.) Mental state and intent are almost always proven circumstantially. (*People v. Thomas* (2011) 52 Cal.4th 336, 354.) When a defendant tried for burglary makes no admissions of his intent, "'the jury [is] required to find his intent upon entry circumstantially,' such as 'from his conduct and statements after entry.' [Citations.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 719 (*Edwards*).)

Defendant's argument appears to be premised on the lack of *direct* evidence that he had the intent to threaten the victim. True enough, the People introduced no testimony that defendant expressed or admitted to having such an intent. But the People introduced sufficient *circumstantial* evidence that he did have such a felonious intent. Before the incident, defendant's friend hired the victim to file eviction papers and, when she told defendant that the court had rejected the papers, he made idle threats to her. When defendant entered the victim's house on the morning of the burglary, he told the victim's mother that he wished to see the victim and to speak to her about the eviction. Defendant

6

then walked back to the victim's bedroom and, rather than discussing the eviction, he placed a gun against her temple, telling her, "I'm going to F'ing kill you." Finally, as the victim ran down the hallway to the living room yelling to her mother that defendant had a gun, defendant said to the victim he "should have taken care of the eviction" himself. From defendant's actions and statements before, during, and immediately after he pointed a gun to the victim's head, a reasonable jury could conclude that defendant intended to threaten the victim at her home. (*Edwards*, *supra*, 57 Cal.4th at p. 719.) As defendant acknowledges in his opening brief, whether the jury concluded that he formed that intent before he entered the front door to the home or just before he entered the victim's separate bedroom makes no difference. (*Taylor*, *supra*, 48 Cal.4th at p. 627.)

Finally, we must reject defendant's suggestion that he cannot be found guilty because he had permission to enter the home and each room inside as he pleased. The victim testified she did not give permission to defendant to enter her house that day, and both the victim and her mother testified they would not have permitted defendant to enter the home had they known what he was up to. But lack of consent is not an element of the crime of burglary (*People v. Felix* (1994) 23 Cal.App.4th 1385, 1397), and a defendant who enters a dwelling with a felonious intent may be found guilty of burglary even if he enters with the owner's or occupant's consent. (*People v. Frye* (1998) 18 Cal.4th 894, 954, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Based on the victim's mother's comment, "You brought a gun into my home?" she did not know about or consent to defendant's felonious purpose. The owner's or occupant's consent to the entry constitutes a defense to burglary only "'when the owner *actively* invites the accused to enter, *knowing* the illegal, felonious intention in the mind of the invitee. . . . [T]he owner-possessor must know the felonious intention of the invitee. There must be evidence "of informed consent to enter *coupled* with the 'visitor's' knowledge the occupant is aware of the felonious purpose and does not challenge it."' [Citation.]" (*People v. Sherow* (2011) 196 Cal.App.4th 1296, 1302.) A defendant has the burden of proving the defense of consent. (*Id*. at p. 1309.) Defendant did not argue consent as a defense at trial, and the evidence does not support such a defense in this case.

Because the record contains substantial evidence that defendant intended to threaten the victim with a gun when he entered her home or when he entered her bedroom, we affirm defendant's burglary conviction.

II

DEFENDANT'S CONVICTION FOR MAKING CRIMINAL THREATS IS

SUPPORTED BY SUBSTANTIAL EVIDENCE

With respect to his conviction for making a criminal threat in violation of section 422, defendant only challenges the sufficiency of the evidence on the element that the threat caused the victim "to be in sustained fear for his or her own safety or for his or her immediate family's safety . . . ." (§ 422, subd. (a).) We conclude the record does contain sufficient evidence that the victim suffered sustained fear.

8

"'Sustained fear' refers to a state of mind. As one court put it, '[d]efining the word "sustained" [in section 422] by its opposites, we find that it means a period of time that extends beyond what is momentary, fleeting, or transitory.' [Citation.] The word fear, of course, describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).) "When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' [Citation.]" (*Ibid.*; accord, *People v. Culbert* (2013) 218 Cal.App.4th 184, 190-191 (*Culbert*) ["Even if the encounter lasts only one minute, a person who is confronted with a firearm held by an angry perpetrator and who believes his or her death is imminent, suffers sustained fear"].)

The victim awoke to find defendant hovering over her and pointing a gun at her temple. She heard defendant cock the gun and heard him say, "I'm going to F'ing kill you." The victim was "really scared" and thought those might be the last minutes of her life. She believed defendant meant what he said because he was holding a gun to her head. The victim then swatted away defendant's hand, sprang from her bed, and ran out of her bedroom and down the hallway screaming that defendant had a gun. When the victim ran into the living room and jumped onto the couch, her mother could tell from the look on her face that the victim was scared.

From this evidence, a jury could reasonably conclude the victim suffered sustained fear from defendant's threats and his act of pointing a gun to her head. Although only a minute or less passed between the victim waking up and her running down the hallway, the terror the victim reasonably experienced from having a gun pointed to her head and

9

being told she would die was not fleeting or trivial.  (*Culbert*, *supra*, 218 Cal.App.4th at pp. 190-191; *Fierro*, *supra*, 180 Cal.App.4th at p. 1349.)  We therefore affirm defendant's conviction for making criminal threats.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
                                                                                    J.

We concur:


HOLLENHORST_____
                Acting P. J.


CODRINGTON_____
                        J.