Filed 8/27/15  P. v. Weber CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL WEBER,<br><br>    Defendant and Appellant. | 2d Crim. No. B257960<br>(Super. Ct. No. 2014004250)<br>(Ventura County) |

Paul Weber appeals his conviction by jury for making a criminal threat (Pen. Code, § 422)[1] with special findings that he personally used a deadly weapon in the commission of the offense (§ 12022, subd. (b)(1)).  The trial court granted probation, ordered appellant to serve 141 days county jail with credit for time served, and ordered appellant to pay victim restitution and various fines and fees.  We affirm.

*Facts*

On February 8, 2014, John Fageaux, Jr. and his 74-year-old father stopped to eat at Burger King in Ventura after attending a college basketball game.  Appellant sat at a nearby table and cursed loudly about having to pay $20 for a hamburger.  Fageaux thought appellant was intoxicated and said, "Please keep it down.  We're trying to eat here."

Appellant cursed Fageaux, said "I'm debating about whether to cut your throat," and stood up.  Fageaux stood up as appellant drew a four-inch switchblade from

---

[1] All statutory references are to the Penal Code unless otherwise stated.

his hip pouch, and flicked the knife open.  Brandishing the knife, appellant stepped towards Fageaux.  Appellant made a couple of jabbing motions with the knife and said, "I'll cut you.  I'll cut you."  Fageaux feared for his life and said, "You come any closer, I'm gonna kick your ass."

Brandishing the knife with his right hand, appellant picked up a cup of hot coffee and yelled, "Come on, come on."  Scared, Fageaux tried to defend himself and said "If you throw that coffee on me, I'm gonna kick your ass."  The bluff worked.  Appellant set the coffee down and left the restaurant.

A restaurant security guard peeked outside the door to see what appellant was doing, and followed him.  Fageaux asked the manager to call the police and followed the security guard outside.  The security guard grabbed appellant's bike and told appellant that he could not leave until the police arrived.

Three police officers responded to the 911 call five minutes later.  Fageaux told the officers that he feared for his life  and signed a citizen's arrest form for appellant's arrest.

Ventura Police Officer Todd Hourigan  reviewed the video surveillance footage which showed appellant sitting at a table, talking to someone not visible in the camera frame.[2]  Appellant was animated, quickly stood up, reached for an object in his back pocket, and made a wrist-flicking motion consistent with the switchblade knife found on his person.  Appellant stood still but made movements with his wrist and arm.  The surveillance video showed Fageaux enter the camera frame.  After an exchange of words, appellant put the object away, grabbed his backpack, and left the restaurant.

*Sufficiency of the Evidence*

Appellant argues that the evidence does not support the finding that he made a criminal threat.  As explained in *In re George T.* (2004) 33 Cal.4th 620, 630-631, a case involving the criminal threats statute:  "Claims challenging the sufficiency of the evidence to uphold a judgment are generally reviewed under the substantial evidence standard.

---

[2] The video did not have sound.   Officer Hourigan asked the restaurant employees for a copy of the video but they were unable to download it.

Under that standard, ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' [Citations.]"  A reversal for insufficient evidence is unwarranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the jury's verdict.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

To convict for making a criminal threat, the prosecution had to prove "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)  The "sustained fear" element is satisfied "where there is evidence that the victim's fear is more than fleeting, momentary or transitory. [Citation.]"  (*People v. Culbert* (2013) 218 Cal.App. 4th 184, 190.)  Fear may be "sustained," even if it lasts for a relatively brief period of time.  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

Appellant flicked the switchblade open, advanced towards Fageaux, made jabbing motions with the knife, and said "I'll cut you. I'll cut you."  It was an unequivocal threat.

Appellant argues that his pre-threat statement ("I'm debating about whether to cut your throat") may not be considered as circumstantial evidence because the prosecution made an election.  Appellant ignores the surrounding circumstances and bases

his argument on the words of the threat alone. "[T]he law does not permit such a myopic examination of the evidence." (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.) In a section 422 trial, , the prosecution, upon request by the defense, must specify which particular statement constitutes the threat. (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883-884.) Here, the prosecution chose the statement "I'll cut you" as the operative threat. The prefatory statement that appellant was "debating" whether to cut Fageaux's throat was circumstantial evidence of a violent encounter that appellant engineered and escalated.[3]

Appellant said "I'm debating whether to cut your throat" and stood up. When Fageaux stood up to defend himself, appellant flicked the knife open, advanced towards Fageaux, and said "I'll cut you. I'll cut you." "The jury [was] 'free to interpret the words spoken from all of the surrounding circumstances of the case.' [Citation.]" (*People v. Hamlin, supra,* 170 Cal.App.4th at p. 1433; *People v. Wilson* (2010) 186 Cal.App.4th 789, 808 [trier of fact may consider defendant's mannerisms, affect, and actions involved in making the threat]; *People v, Mendoza* (1997) 59 Cal.App.4th 1333, 1340 [same].)

Appellant claims there was no sustained fear because Fageaux was bigger and said he would kick appellant's ass. Fageaux reasonably believed that his physical size was not an advantage because appellant had a knife, was ready to use it, and made jabbing motions with the knife as he advanced towards appellant. The fact that Fageaux tried to defend himself does not make it any less of a criminal threat.

On the weapon enhancement, the jury found that appellant displayed the knife in a menacing manner and used it in such a way that it was likely to cause death or great bodily injury. (§ 12022, subd. (b)(1); CALCRIM 3145.)

Appellant argues there was no sustained fear because the confrontation was less than two minutes. "'When one believes he is about to die, a minute is longer than "momentary, fleeting or transitory" ' " for purposes of establishing sustained fear under

---

[3] The jury was instructed: "In deciding whether a threat was sufficiently clear, immediate, unconditional and specific, consider the words themselves, as well as the surrounding circumstances." (CALCRIM 1300.)

4

section 422. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) Fageaux was very upset and repeatedly asked the police whether appellant was going to jail. On the drive back to Long Beach, appellant was "absolutely" shaken and talked to his father. Fageaux telephoned his son on the basketball team bus and told him "how crazy it was and how this guy came after me with a knife. "

Fageaux's call to his son and the discussion with his father clearly show that Fageaux's fear was more than momentary. Our courts have upheld convictions for criminal threats where the duration of the sustained fear was substantially less. (See e.g., *People v. Fierro, supra,* 180 Cal.App.4th at p. 1349 [victim in sustained fear for approximately 15 minutes]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [same].)

*Booking Fee and Administrative Service Fee*

The sentencing minute order states that appellant was ordered to pay a $404.23 Criminal Justice Administration Fee (booking fee) and a $35 administrative service fee. Appellant argues that the fees should be stricken because they are not part of the oral pronouncement of judgment. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [where there is a discrepancy between the oral pronouncement of judgment and sentencing minute order, the oral pronouncement controls].)

The probation report states that appellant was a suitable candidate for probation and "[p]ursuant to Sections 29550 and 29550.1 of the Government Code, the defendant shall be ordered to pay a criminal justice administrative fee (booking fee) of $404.23" and "an administrative fee (ARF) of $35."[4] Appellant's trial attorney requested that the court "follow probation's recommendation. . . ." During the hearing, appellant signed a minute order which listed the probation conditions and fees and recited: "I have received a copy of these conditions. I understand and agree to each of the conditions listed above." There is no discrepancy between the oral pronouncement of judgment and the

---

[4] The $35 administrative service is based on section 1205, subdivision (e) which permits the imposition of an administrative fee in excess of a $30 cap where, as here, the defendant is placed on a monthly payment plan to pay his fines.

minute order which states that appellant agreed to pay the booking fee and administrative service fee. The trial court's incorporation by reference of the probation report which lists the fines and fees to be imposed did not prejudice appellant. (See *People v. Hamed* (2013) 221 Cal.App.4th 928, 939-940; Couzens & Bigelow, Cal Practice Series, Sentencing California Crimes (The Rutter Group 2014) § 17:22, p. 17-15.)

Appellant argues that the fees must be stricken because the trial court failed to find that appellant has the financial ability to pay. (See Gov. Code, § 29550.2, subd. (a).) Appellant forfeited the issue by not objecting and when he signed the minute order to pay the fees. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866-867; *People v. Trujillo* (2015) 60 Cal.4th 850, 858-859; *People v. McCullough* (2013) 56 Cal.4th 589, 591.) "[T]he Legislature considers the financial burden of the booking fee to be de minimis and has interposed no procedural safeguards or guidelines for its imposition. In this context, the rationale for forfeiture is particularly strong. [Citation.]" (*People v. McCullough, supra,* 56 Cal.4th at p. 599.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:



        GILBERT, P. J.



        PERREN, J.

6

Ferdinand D. Inumerable, Judge

Superior Court County of Ventura

_____

Laini M. Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.