Filed 7/22/22  P. v. Crawford CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THEODORE CHRISTOPHER CRAWFORD,<br><br>  Defendant and Appellant. | G060233<br><br>(Super. Ct. No.  18NF3092)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles Ragland and Arlene Sevidal, Assistant Attorneys General, Melissa Mandel, Kathryn Kirschbaum and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Theodore Christopher Crawford appeals from the judgment following his conviction on five charges, including making a criminal threat (Pen. Code,[1] § 422, subd.(a)), assault with a force likely to produce great bodily injury (§ 245, subd. (a)(4)), and domestic-violence battery (§ 243, subd. (e)(1)). He argues the criminal threat conviction must be reversed because the court failed to instruct the jury on the lesser charge of *attempted* criminal threat. He also argues the assault and battery convictions must be reversed because the court failed to instruct the jury on his right to act in defense of his property.

We are not persuaded by either argument. The court has no duty to instruct on a lesser included offense when there is no substantial evidence to support the lesser offense. That is the case here. Crawford's theory is that the history of dysfunction and violence between him and his wife—the victim—was evidence that might have caused the jury to doubt she actually experienced sustained fear as a consequence of his threats to kill her while he was choking and punching her, and holding a knife to her throat. Crawford thus contends that evidence was sufficient to support the conclusion that his threat was merely an attempted criminal threat.

We cannot agree. While the evidence of that troubling history was before the jury, there was not substantial evidence to support the inference Crawford suggests the jury might have drawn—i.e., that a person who has experienced past relationship

---

[1]     All further statutory references are to this code.

2

violence or dysfunction would be less likely to experience fear during an incident such as this. Speculation does not qualify as substantial evidence to support the lesser charge.

Crawford's challenge to his assault convictions is based on evidence that his wife was throwing his clothing when he assaulted her. He argues he was entitled to an instruction advising the jury of his right to act in defense of his property. We disagree for two reasons: first, because there is no evidence Crawford was acting out of concern for the security of his property; he made no such claim when he testified. And second, physically assaulting a spouse in response to such a minimal affront to clothing is unreasonable as a matter of law.

In a supplemental brief, Crawford also contends the case must be remanded to the trial court for resentencing, in light of a recent amendment to section 654. The amendment gives the court discretion, in cases where an act or omission is punishable in different ways under different laws, to impose punishment under any of the applicable provisions, rather than being compelled to impose the most severe punishment option. In this case, Crawford's convictions on counts 5 and 6 arise out of the same conduct, and in accordance with the prior version of section 654, the court automatically imposed the longer sentence under count 5, rather than the shorter option under count 6. The Attorney General agrees the case must be remanded to allow the court to exercise its new discretion, and so do we.

**FACTS**

Crawford was charged with attempted murder (§§ 664, subd. (a) & 187, subd, (a)) (count one), assault with a deadly weapon (§ 245, subd. (a)(1)) (count two), domestic-violence battery causing corporal injury (§ 273.5, subd. (a)) (count three), making a criminal threat (§ 422, subd.(a)) (count four), assault with a force likely to produce great bodily injury (§ 245, subd. (a)(4) (count five), and misdemeanor domestic-violence battery (§ 243, subd. (e)(1)) (count six). The information also alleged

3

four prior strike convictions and four prior serious felony convictions. (§§ 667, subds. (a)(1), (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A).)

The victim in each of the charged counts was Crawford's wife, T.J., whom he married in November 2017. Their relationship was tumultuous. The jury heard evidence that in June of 2018, while Crawford and T.J. were sharing an apartment with T.J.'s daughter and grandson, Crawford demanded to have the apartment to himself and threatened to kill T.J., her daughter, and her grandson if they did not leave. Although they attempted to leave while Crawford was out, he returned before they were gone. After T.J. locked the apartment door, Crawford retrieved a metal bar from his car and again threatened to kill everyone. T.J. then called the police and the family locked itself in the bathroom when Crawford banged on the window demanding entry. T.J. obtained a restraining order against Crawford as a consequence of that incident, but the two later reconciled.

The charged counts arise out of two additional incidents involving Crawford and T.J. The first incident—the basis of counts five and six—occurred in September 2018 when Crawford and T.J. were living in a small "efficiency" apartment (including a kitchenette and bathroom) on the ground floor of a motel in Anaheim.

According to a neighbor who witnessed the incident, "We heard a lot of arguing and she was throwing his clothes out and he told her not to throw his F'ing clothes out . . . ." Crawford, who was initially outside the room, pushed his way inside. After he got in, Crawford grabbed T.J. by the hair, threw her on the bed, and punched her. T.J. herself testified that Crawford pulled her hair so hard "he yanked out a handful of my braids, and it left like a bald spot on my head." The neighbor called 911.

Crawford told T.J. he would kill her if she spoke to the police, so when they arrived T.J. acted angry and refused to talk to them. She explained she "was trying to do whatever it took for the[] [police] to leave, because [she] didn't want [Crawford] to beat [her]."

4

Crawford told a different story about the incident, testifying he had arrived home from working in San Francisco to find T.J. "passed out on the lawn." He woke her up and told her "I'm sick and tired of this. I'm leaving." After he helped her up, he went to the room, grabbed a laundry basket, and started throwing his clothes into it. T.J. came up behind him and started throwing his clothes out of the basket, apparently to keep him from leaving. As he tried to grab the clothes back from her, "her hair got pulled." Crawford denied throwing her on the bed or punching her. He claimed he "was just trying to get away."

The second incident, which was the basis of counts 1-4, occurred in early November 2018—less than two months after the September incident and just a year after Crawford and T.J. married. Crawford came home in the late afternoon, carrying beer. The pack was already open, and T.J. could smell beer on his breath. She testified she drank one beer earlier that day.

Crawford asked T.J. to have a drink with him and she agreed. She was lying on the bed, and he was sitting next to her. Crawford became angry when T.J. told him she wanted to return to work and was pursuing an apprenticeship. He did not want her to work, and disliked the idea she might earn more money than he did. T.J. told Crawford she needed to work because they were living in a motel and said she wanted to live in an apartment or a house.

T.J.'s expression of dissatisfaction set Crawford off; he jumped on top of her, straddled his legs around her body, and grabbed her neck. He began choking her and threatened to kill her. He also punched her in the face several times. She said she was having trouble breathing and began seeing spots.

T.J. was able to roll off the bed, which caused Crawford to stand up. She ran into the bathroom, and he went into the kitchenette. T.J. tried to close herself in the bathroom, but Crawford pushed open the door. He had a knife in his hand with the blade pointed toward her. He told her again he was going to kill her.

5

Crawford swung the knife toward T.J., cutting her finger. When he saw that her finger was bleeding, he grabbed her, pulled her toward him, and put the knife to her neck. He again told her he was going to kill her: "I'm going to prison for life anyway. I'm going to kill you—might as well kill you." T.J. was attempting to hold the knife away from her neck as he made a slashing movement across it, causing her finger to be cut again.

T.J.'s finger was bleeding; the two then emerged from the bathroom into the kitchen area, where Crawford grabbed a towel and held onto her finger to stop the bleeding, commenting, "[s]ee what you made me do." He then grabbed the knife again, and held it against T.J.'s face as he told her he was going to kill her; T.J. sustained a cut on her face.

Crawford then backed off and began grabbing his things. He said he knew he was going to jail and he left. T.J. then threw on a dress, ran to her car, and drove to the police station. As she was driving, she spotted a car that looked like Crawford's behind her.

When T.J. arrived at the police station, she sat in her car for a moment before she ran into the police station. She alerted the officers at the front desk that Crawford had tried to kill her and he was behind her. She was visibly distraught, and remained so throughout her subsequent hour-long interview with the police.

During the incident, T.J. believed Crawford would kill her because of the tightness and anger in his face and the way he was breathing. She testified that time was different because he just kept saying it over and over, and he reasoned that he should do it because he would be going to jail anyway.

Once again, Crawford's version of the incident was quite different. He testified that he had brought a twelve-pack of beer home at T.J'.s request, and that after she drank her six beers, she asked for some of his. When he teased her about the beer, they began to argue. Crawford claimed T.J. punched him first, and he punched her only

6

once in response. She jumped on him, and they both fell onto the floor. When he tried to push her away, she suffered scratches on her face and neck.

Crawford then grabbed his overnight bag as T.J. continued to attack him. He grabbed a knife and waved it at her to fend her off. He said T.J. cut her own finger. Crawford threw the knife down and went with T.J. into the bathroom to tend to her cut, commenting "look what you made me do." She asked him to take her to see a doctor, but he refused, explaining that he would be arrested. He told T.J. he was finished with their relationship for good, packed his bag, and left. He denied threatening T.J. or choking her.

The jury acquitted Crawford of attempted murder (count one), but hung on the lesser offense of attempted voluntary manslaughter. The trial court declared a mistrial as to that count and subsequently dismissed it.

The jury found Crawford guilty on all of the remaining counts. At a subsequent hearing, the court found the prior strike convictions to be true and sentenced Crawford to 27 years to life in state prison. The sentence is comprised of two concurrent terms of 25 years to life on counts two and four (assault with a deadly weapon and making a criminal threat, respectively), plus a determinate term of one year as to count five (assault with a force likely to produce great bodily injury), doubled under the Three Strikes law. The punishments for the remaining counts were stayed and the court dismissed the prior serious felony convictions in the interests of justice .

## DISCUSSION

1.      *Duty to Instruct Jury on Lesser Charge of Attempted Criminal Threat*

Crawford first contends the court erred by failing to instruct the jury on a lesser included charge of attempting to make a criminal threat.

'""It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by

7

the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

Crawford relies on the rule requiring the court to instruct only when a lesser included offense "'find[s] substantial support in the evidence (*Breverman, supra*, 19 Cal.4th at p. 162),'" but he makes no effort to demonstrate that such evidence existed here. Instead, he contends the trial court had a duty to instruct the jury on the lesser offense "because defense counsel *argued* that the prosecution had failed to prove beyond a reasonable doubt that [his] threat left [T.J.] in sustained fear." (Italics added.) He does not discuss the substance of that argument, but seems to suggest the fact it was made at all triggered the court's duty to instruct on the lesser charge.

The record does not reflect that defense counsel actually made that argument. While counsel did note that the crime of making a criminal threat requires the threat to "cause the person who is on the receiving end of it to remain in sustained fear," she never argued there was a reasonable doubt about that element. Instead, counsel acknowledged T.J. "said that she had to go to counseling [and] hypnosis," and while she noted "[w]e didn't get much other details on that," she did not dispute the claim. She then pointed out T.J. had suffered a work injury that caused her "trauma forcing her to use a cane," and noted T.J. was in better physical condition at the time of the November 2018 incident. Counsel concluded, "[s]o, you know, unfortunately, what we saw was not the same [T.]J. back from 2018, you know, and that's too bad. But that's not anything to do with Mr. Crawford. And [T.J.] admitted that too." Defense counsel then turned to addressing a different count.

8

Thus, defense counsel never claimed, let alone offered a full-blown argument, that the element of sustained fear had not been proven in this case. Moreover, as Crawford acknowledges, when the court asked Crawford's counsel to confirm that she was *not* requesting an instruction on the lesser offense of attempted criminal threats, she responded "[y]es; that's correct." Consequently, even if we assume such an argument could trigger the court's obligation to instruct on the lesser offense, there was no such trigger here.

The Attorney General argues in his respondent's brief that there is no evidence to support the lesser offense and that Crawford never disputed the issue of sustained fear. Instead, Crawford's sole defense was his denial that he made the threats.

Crawford replies to the latter point by arguing juries do not always adhere to the parties' theory of the case in deciding whether they are persuaded by the prosecution's case. He cites *People v. Rodriguez* (2018) 26 Cal.App.5th, 890: "[i]t is well established that the jury is entitled to form its own theory of the case, if supported by the evidence, and to pick and choose the parts of each witness's testimony that it finds credible, provided there is substantial evidence in support of the view it decides to take." (*Id.* at p. 902.)

Crawford then argues, for the first time in his reply brief, there is evidence in the record that would allow the jury to conclude T.J. did not "suffer sustained fear as required for the completed crime [of criminal threat]." While Crawford acknowledges that such an assertion would "strain credulity" in the abstract, he posits that in light of the evidence of his past "dysfunction[al]" relationship with T.J., it does not do so here. In other words, Crawford argues the jury might have concluded that due to his past violence toward T.J., she would not have experienced the fear that another person would have under similar circumstances.

9

Crawford waived that factual argument by failing to make it in his opening brief. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 276 ["Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue"].) In any event, the argument would fail. As the Attorney General points out, "sustained fear" does not mean the victim had to remain in fear for some significant period of time after the threats were made. Instead, as the jury was instructed in this case, "sustained fear" means only "fear for a period of time that is more than momentary, fleeting, or transitory." As explained in *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349, "[w]hen one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.'" With that rule in mind, it is inconceivable that a person in T.J.'s position—who was being choked, punched in the face and violently attacked with a knife by someone who was repeatedly threatening to kill her—would not have experienced "sustained fear" *throughout* that attack.

Crawford's attempt to carve out an exception for people who have endured a "dysfunction[al]" relationship history—suggesting that such people would be immune from fear even in the midst of a significant escalation of violence—is unavailing. The argument is unsupported by any evidence in the record that such a link exists. Speculation does not qualify as substantial evidence. (See *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 ["Speculation or conjecture alone is not substantial evidence"].) Crawford's argument appears to conflate the issue of why a victim of domestic violence might stay in the relationship, with the issue of whether that person would experience fear during a subsequent incident in which the violence escalated. Those are distinct inquiries.

10

2.      *Duty to Instruct Jury on Defense of Property*

Crawford also contends that his convictions on counts 5 and 6 (assault with a force likely to produce great bodily injury and misdemeanor domestic-violence battery, respectively), must be reversed because the court failed to instruct the jury on his right to use reasonable force to defend his property from imminent harm. (CALCRIM No. 3476 ["The owner [or possessor] of (real /[or] personal) property may use reasonable force to protect that property from imminent harm"].)

Both the convictions arose out of the September 2018 incident, which featured T.J. either (1) throwing Crawford's clothing out of the room toward him (according to the neighbor who witnessed the incident and called 911), or (2) throwing his clothing out of the laundry basket he was using to collect it, in an effort to deter him from leaving (according to Crawford's own version of the incident).

Crawford argues the fact T.J. was throwing his clothing around might have caused the jury to conclude it was reasonable for him to physically assault her with force likely to produce great bodily injury or to engage in domestic battery. The defense of property instruction presumes the jury has found beyond a reasonable doubt that the defendant intentionally engaged in conduct amounting to those crimes, and then asks the jury to consider whether the defendant's violent conduct was a "reasonable" means of protecting his or her property. To state that proposition is to refute it. It is unreasonable, as a matter of law, to inflict significant corporal injury on a spouse under those circumstances.

There are additional problems with Crawford's theory. Most significant is the absence of any evidence suggesting he was motivated by any concern about his property. In the neighbor's version of events, T.J. threw the clothing from inside the room to the outside, where Crawford was standing. He responded by ignoring the clothing, and instead forcing his way inside where he proceeded to attack her. Those

11

facts demonstrate anger and reflect a potentially retaliatory motive; they do not suggest Crawford was attempting to protect his property.

Crawford's testimony failed to raise the defense of property theory; he never claimed any concern about the status of his property. Instead, he testified that his goal was to leave, and that T.J.'s hair got pulled while he was fending off her attempt to interfere with his packing. That claim is not consistent with an inference that he pulled her hair (and punched her) *intentionally* as part of an effort to prevent his property from being harmed.

Crawford argues the phrase "imminent harm" should be interpreted to include not only the infliction of physical harm to his clothing, but also the improper interference with his *dominion* over it. Under this theory, Crawford would be entitled to use force against T.J. merely because she moved his clothing against his will. However, the cases Crawford cites do not support that expanded defense of property theory.[2] In any event, even if there were a right to use force to defend against the fleeting loss of control over clothing, that brings us back to the requirement that the force used in defense of property must be "reasonable." In this case, it was not.

3.    *Remand for Resentencing*

Crawford's convictions on counts 5 and 6 (assault with a force likely to produce great bodily injury, and misdemeanor domestic-violence battery, respectively) arise out of the same conduct in the September 2018 incident.

_____

[2]        Both *People v. Teixeira* (1899) 123 Cal. 297, 298-299 (*Teixiera*) and *People v. Corlett* (1944) 67 Cal.App.2d 33, 51-52 (*Corlett*), disapproved on other grounds in *People v. Carmen* (1951) 36 Cal.2d 768, 776, are cases in which the court rejected the appellant's contention that a defense of property instruction should have been given. Moreover, in *Teixeira*, the defendant was apparently arguing that his victim was attempting to permanently deprive him of the property in question (*Teixeira, supra,* at p. 298.), while in *Corlett*, the defendant asserted he was afraid his victim would burn down his bunkhouse. (*Corlett, supra*, at p. 42.) And *People v. Myers* (1998) 61 Cal.App.4th 328, 335, states a rule about battery, not the right to defend property.

Although a defendant can be convicted of separate crimes arising out of the same act or indivisible course of conduct, section 654 provides he or she can be punished only once. (*People v. Hester* (2000) 22 Cal.4th 290, 292.) Prior to January 2022, section 654 required that "An act or omission that is punishable in different ways by different provisions of the law shall be punished under the provision that provides for the longest potential term of punishment." (Former § 654, subd. (a).) Crawford was sentenced under the former version of section 654, which required the trial court to impose punishment on count 5, while staying his sentence on the lesser charge he was convicted of in count 6.

Assembly Bill No. 518 amended section 654 by eliminating the requirement that a court impose the longest potential term, and instead granted the court discretion to impose punishment under any applicable provision. (Stats. 2021, ch. 441, § 1.) As non-emergency legislation, the amendment became effective on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c).)

Under *In re Estrada* (1965) 63 Cal.2d 740, we presume that ameliorative changes to the criminal law apply retroactively to all judgments that are not yet final. (*Id*. at pp. 745, 747–748.) The Attorney General concedes the *Estrada* rule applies here and that this case must be remanded to allow the trial court to exercise the sentencing discretion now required by section 654. We agree.

## DISCUSSION

The judgment is reversed in part, and the case is remanded to the trial court with directions to exercise discretion under section 654 in determining whether to impose

13

punishment for Crawford's conviction under count 5 or under count 6.  In all other respects, the judgment is affirmed.


                                             GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

   *Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.