Filed 3/6/23  P. v. Ramos CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>SALVADOR MADRIGAL RAMOS,<br><br>     Defendant and Appellant. | F083827<br><br>(Super. Ct. No. CR-20-009347)<br><br>**OPINION** |

### <u>THE COURT</u>*

APPEAL from an order of the Superior Court of Stanislaus County.  Joseph R. Distaso, Judge.

Kieran C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Peña, Acting P. J., Smith, J. and DeSantos, J.

Defendant Salvador Madrigal Ramos contends on appeal that the evidence presented at trial was insufficient to support his conviction for making criminal threats. We affirm.

## PROCEDURAL SUMMARY

On December 9, 2020, the Stanislaus District Attorney filed an information charging defendant with two counts of attempted murder (Pen. Code, §§ 664/187, subd. (a);[1] counts 1 & 2); assault with a deadly weapon (§ 245, subd. (a)(1); count 3); criminal threats (§ 422, subd. (a); count 4); and spousal battery (§ 273.5, subd. (a); count 5). It was further alleged as to counts 1 and 2 that the crimes were committed with premeditation and deliberation, that the crimes were committed under circumstances involving domestic violence and defendant inflicted great bodily injury (§ 12022.7, subd. (e)), and that defendant used a deadly and dangerous weapon (§ 12022, subd. (b)). As to count 3, it was further alleged that the crime was committed under circumstances involving domestic violence and defendant inflicted great bodily injury (§ 12022.7, subd. (e)). As to count 4, it was further alleged that defendant used a deadly and dangerous weapon (§ 12022, subd. (b)). As to count 5, it was further alleged that the offense was committed under circumstances involving domestic violence and defendant inflicted great bodily injury (§ 12022.7, subd. (e)), and that he used a deadly and dangerous weapon (§ 12022, subd. (b)). As to all counts, the information further alleged that defendant committed the crimes while released on bail (§ 12022.1).

On June 23, 2021, a jury found defendant guilty on all counts and found true the allegations. The out-on-bail enhancements were subsequently stricken.

On January 18, 2022, defendant was sentenced to the aggregate term of 24 years to life. On counts 1 and 2, defendant was sentenced to seven years to life with the possibility of parole, plus four years (the mid-term) for each of the section 12022.7, subdivision (e) enhancements, and one year (the mid-term term) each for the

---

[1] All statutory references are to the Penal Code unless otherwise noted.

section 12022, subdivision (b) enhancements.  The sentences for the remaining counts and enhancements were stayed.

On January 25, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

Jasmine[2] and defendant had been in a dating relationship for approximately six years.  They were still in a dating relationship at the time of the trial.

On September 25, 2020, Jasmine, Anthony, and Lionel were in a white car shared by defendant and Jasmine.  Defendant was not present.  Anthony was driving, Jasmine was in the front passenger seat, and Lionel was in the back seat with Jasmine's dog.

Jasmine spotted a small SUV driving towards them and told Anthony to "step on it" if the SUV turned around.  The SUV then made a U-turn, ran a stop sign, and began chasing the car, trying to ram it.  Jasmine told Anthony, "Don't let them hit the car."  Anthony began having difficulty driving the car as the SUV continued to pursue them.  Everyone in the car was screaming and panicking.  Jasmine said to Anthony, "[d]on't stop," and "[s]tep on it."

Anthony pulled the car over when he could not drive forward anywhere.  Jasmine said to Anthony, " 'He doesn't fight; he stabs.' "  Anthony soon realized Jasmine was referring to defendant when he saw defendant[3] exit the passenger side of the SUV and approach the car.

Anthony's driver's side window was open.  When defendant reached it, he began stabbing Anthony in the face, hands, and arms through the open window.  Defendant then opened the driver's side door and stabbed the knife "all the way" into Anthony's leg.

---

**2**     Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names.  No disrespect is intended.

**3**     While Jasmine maintained throughout defendant's trial that the perpetrator of the attack was not defendant and was another person with whom she had previously had a dating relationship, the jury found defendant guilty on all counts.

Anthony was screaming as defendant stabbed him. Blood was "squirting everywhere," and Anthony believed defendant was going to kill him.**4**

Jasmine pulled Anthony out of the car through her passenger side door. Anthony testified that defendant looked at Jasmine after she pulled Anthony out of the car and told her, " 'I'm going to kill you, bi***.' "

Anthony stated defendant was "standing up with the knife right there … next to the driver's side. And [defendant] acted like he was going to [walk] around the car towards [the passenger side] again. And then I acted like I[ was] going to jump into the driver's side, you know, just take off with the car .… And so I stopped [defendant]—that stopped [defendant] from coming around [to the passenger side of the car]," where Jasmine and Anthony were standing.

Jasmine stated that defendant then got into the car and drove it toward Jasmine's dog standing nearby. She yelled and screamed at him to stop.

Jasmine testified that defendant got out of the car and said to her, " 'You cheating bi*** wh***,' " and "possibly" said " 'I'm going to kill you too, bi***,' " as he approached her, walking "[l]ike a force.… [¶] … [¶] Just steady and strong."

When asked whether she believed defendant's threats to kill her were in earnest, she answered, "Well, he was trying to do so.… [¶] … [¶] [T]he facts being what they are, yes. It's not a belief. It just happened."

Jasmine stated that she froze as he approached because she was "terrified of him." Defendant then stabbed her twice in the temple.

When asked if she was afraid as defendant approached, she stated, "I stood still.… I just kind of stayed there. I don't know. I didn't move really. And I think I stood there until he drove off, too, for a little bit and then just walked off." She stated that "it was

---

**4**     At some point after the car stopped, Lionel exited the car and ran away. Anthony stated that Lionel stated before he exited the car that he was afraid of defendant.

obvious" to her that defendant was going to hurt her. When asked if she said she was "terrified" that defendant was going to hurt her, she stated, "I'm not sure. I just froze. I couldn't move."

After defendant stabbed Jasmine, the other occupant of the SUV said to defendant, "Let's go. Let's go." Defendant then got into the Mercedes and drove away.

Jasmine saw Anthony and told him he needed help, then began to walk away. When Anthony asked where she was going, she stated, " 'I'm just going to go and get away before [defendant] comes back. He might shoot us."

Anthony noticed Jasmine was bleeding from her face. She told him not to worry about her and screamed at him that he should be getting help for himself. She gave him her phone, but his hands were too injured for him to operate it. Eventually, some nearby residents called 911 and Stanislaus County Sheriff's deputies and an ambulance arrived.

Anthony identified defendant as his attacker to the sheriff's deputies later that day. He was taken to the hospital, where he underwent surgery and received numerous stitches. As of trial, Anthony was in constant pain and movement in his hand and leg was permanently impaired.

Sheriff's deputies found Jasmine approximately three blocks away. She identified defendant as the attacker. Jasmine initially refused treatment, but later went to a hospital and received 18 stitches for the wounds to her face.

Forensic DNA analysis showed that defendant was a contributor to the swab taken from the knife handle, and Anthony was a contributor to the swab taken from the knife blade.

## DISCUSSION

Defendant contends the evidence presented at trial was insufficient to prove his threats caused Jasmine to be in "sustained fear." We disagree.

5.

### A.    Law

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Bolden* (2002) 29 Cal.4th 515, 553.)  We must draw all reasonable inferences in support of the judgment.  (*People v. Wader* (1993) 5 Cal.4th 610, 640.)  "It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955; accord, *People v. Young* (2005) 34 Cal.4th 1149, 1181.)  We look for substantial evidence, and we may not reverse a conviction for insufficiency of the evidence unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Although we review the whole record, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296; see *People v. Panah* (2005) 35 Cal.4th 395, 489.)  Furthermore, " ' " '[c]ircumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' " ' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.)  If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.  (*Ibid*.; *Panah*, at p. 488.)

Section 422 defines the offense of criminal threats as follows:

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific

6.

intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (§ 422, subd. (a).)

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … [was] to be taken as a threat, even if there [was] no intent of actually carrying it out,' (3) that the threat … was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.) " 'Sustained fear' refers to a state of mind." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) "[It], of course, describes the emotion the victim experiences." (*Ibid.*)

Under section 422, subdivision (a), for fear to be "sustained," it must last for "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; see CALJIC No. 9.94; CALCRIM No. 1300.)

In determining whether the sustained fear element was satisfied, the threat must be examined both on its face and under the circumstances in which it was made. (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 810.) A victim need not testify that they were in sustained fear in order to satisfy the subjective component of the

sustained fear element.  Whether the victim was in sustained fear can be inferred from the evidence.  (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 417.)  Similarly, a percipient witness "could conceivably testify to having observed a person targeted by another's criminal threat actually experience sustained fear and, in so doing, supply sufficient evidence of the subjective element."  (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 606.)

### B.      Analysis

There is ample evidence to support the jury's finding that defendant's criminal threat caused Jasmine to be in sustained fear.

Defendant first contends that Jasmine never said she was in fear because of defendant's threat.  He argues that Jasmine's testimony that she "froze," and had heard threats to kill her before from the person that she maintained was the attacker shows Jasmine was only in fear during the actual act of defendant stabbing her, "not on account of a statement of intent to inflict some *future* harm," and regarded his threat to kill her as "mere angry words."

However, the evidence shows Jasmine was in fear that defendant would harm her because of his threat.  Anthony testified that defendant told Jasmine " 'I'm going to kill you, bi***.' "  Jasmine also testified that just after defendant stabbed Anthony, defendant threatened her and then walked towards her with "force."  She stated that while he was walking towards her, she "froze" because she was "terrified of him" and she believed his threat that he was going to hurt her.  As Jasmine testified that she believed defendant's threat and was frozen in fear for the duration of time between his verbal threat and when he began stabbing her, the evidence clearly supports the jury's finding that she was in fear because of defendant's threat.

Defendant further contends that there was, "nothing [on the record] from which to infer that any fear [Jasmine] might have felt lasted for … longer than momentary or transitory time."  However, the evidence shows Jasmine's fear from defendant's threat

was "sustained," and extended beyond "what is momentary, fleeting, or transitory." (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156.)

In *People v. Fierro*, the court concluded there was substantial evidence the victim felt "sustained fear" when he heard someone say, " 'I will kill you … right now,' " coupled with seeing a weapon. (*People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349.) The *Fierro* court concluded that even a single minute of fear, during which the victim heard the threat and saw the weapon, qualified as "sustained" under the section 422. (*Ibid*.) "When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' " (*Ibid*.)

As in *Fierro*, defendant threatened to kill Jasmine while holding the weapon, here a knife, with which she had just seen him repeatedly stab Anthony's face, hands, wrists, and leg in the car seat next to her. After defendant threatened Jasmine, he walked toward her with force. Jasmine "froze," because she was "terrified of him" and believed his threat, until defendant reached her and stabbed her twice in the face. While it may not have taken defendant long to walk from where he was standing when he threatened her to where she was standing when he stabbed her, as *Fierro* states, even one minute "is longer than 'momentary, fleeting, or transitory,' " where Jasmine believed she was going to die after being threatened by defendant and seeing the knife in his hand. Accordingly, Jasmine's fear was sustained.

Defendant further contends that nothing in Jasmine's testimony shows that she was afraid during the incident, pointing to Jasmine's testimony that she didn't see defendant walk up to her with the knife after he threatened her and her refusal to go to the hospital.

However, this testimony conflicts with Jasmine's other testimony that, after defendant threatened to kill her, she froze because she was "terrified of him" and believed his threat, as he walked toward her with "force," holding the knife, and stabbed her. It also conflicts with Anthony's testimony that Jasmine said she was walking away

after the stabbing because she was afraid defendant would return to shoot them, as she stated to Anthony, " 'I'm just going to go and get away before [defendant] comes back. He might shoot us.' " The inconsistent testimony merely raises a question of credibility. " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.) The only exception to this principle is where the testimony is "physically impossible or inherently improbable." (*People v. Young*, *supra*, 34 Cal.4th at p. 1181; see *People v. Headlee* (1941) 18 Cal.2d 266, 267 ["[w]here … the evidence relied upon by the prosecution is so improbable as to be incredible, and amounts to no evidence, a question of law is presented which authorizes an appellate court to set aside a conviction"].) That exception does not apply here. Anthony and Jasmine's testimony was based on their recollection of the events, and none of it was "physically impossible" or "inherently improbable." (*Young*, at p. 1181.) The jury was entitled to believe Jasmine's other testimony about her state of mind during the attack. Furthermore, the jury was entitled to rely on Anthony's testimony to ascertain Jasmine's state of mind during the attack, as the victim's state of mind may be inferred from the evidence. (*People v. Ortiz*, *supra*, 101 Cal.App.4th at p. 417.)

Ultimately, the jury chose to credit the evidence that Jasmine reasonably feared defendant was going to harm her and remained in sustained fear because of his threat throughout the incident. Substantial evidence supported their verdict.

## DISPOSITION

The disposition order is affirmed.

10.