[No. B209030. Second Dist., Div. Eight. Jan. 11, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO FIERRO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 2 of the Statement of the Facts and part 2 of the Discussion.

**COUNSEL**

Carol S. Boyk, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOHR, J.***—

## INTRODUCTION

Appellant Alejandro Fierro appeals from his conviction of making criminal threats and giving false information to a police officer. He contends that the verdicts are not supported by substantial evidence. We disagree and affirm the judgment.

## STATEMENT OF THE CASE

In a three-count information, appellant was charged in count 1 with making criminal threats in violation of Penal Code section 422.[1] He was charged in count 2 with attempted criminal threats (§§ 664, 422), and in count 3 with giving false information to a police officer (§ 148.9, subd. (a)). It was further alleged as to counts 1 and 2 that appellant had suffered a prior conviction and had not remained free of custody for five years before committing the current felonies. (§ 667.5, subd. (b).) Appellant pleaded not guilty. The jury convicted him on all three counts. After waiving a jury trial on the prior conviction, appellant admitted the allegation. He was sentenced on May 13, 2008, to a total of five years in state prison plus various fines and assessments. Appellant filed a timely notice of appeal.

## STATEMENT OF THE FACTS

1. *The Incident at the Gas Station*

This case stems from what should have been a nonevent between two motorists: appellant and Michael Ibarra. Ibarra's 14-year-old son, A.I., was a passenger in Ibarra's car.

The Ibarras and appellant never knew each other until August 8, 2007, when they met at an ARCO gas station.[2] Both arrived, in their respective

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] Much of what transpired was captured on a surveillance video, which the prosecution played for the jury while Ibarra narrated.

cars, at about the same time. Ibarra believed that appellant was blocking access to the pumps. (A.I. actually believed appellant had cut them off as they approached a pump.) Ibarra asked appellant to move his car. In a sarcastic tone of voice, appellant told Ibarra to make that request in Spanish. Even though Ibarra speaks Spanish, he repeated his request in English. Again appellant told him to ask, politely, in Spanish. Appellant then went into the store to pay for his gas.

Perturbed, Ibarra followed appellant into the store and asked him again to move his car. And once more appellant said—in Spanish—to make the request politely in Spanish. When it became clear appellant was not going to cooperate, Ibarra said, "Well, fuck you, then," and returned to his car, where he waited by the driver's side for appellant to finish fueling.

Once he finished, appellant got back in his car, opened a beer bottle, and gestured as if offering some to Ibarra. Ibarra "gave him the bird as he did that," and appellant smiled at Ibarra. Appellant drove forward, slowly, until he was even with Ibarra. Again he picked up the bottle and gestured as if offering Ibarra a drink. And again, Ibarra gave appellant "the middle finger." Finally, appellant drove away.

Ibarra repositioned his car so he could fill his gas tank. As he started to use his debit card at the paypoint kiosk next to the pump, he noticed that appellant had not left after all. Instead, he had circled and was driving back toward Ibarra. Ibarra canceled his purchase and attempted to leave in order to avoid a second confrontation. Since another car was in front of his, Ibarra backed up, turned, and started forward. That is when appellant got out of his car and walked toward Ibarra.

Appellant called a nearby patron to interpret and, in an aggressive tone of voice, told this person several times to ask Ibarra, "Do you want to fuck with me now?" The interpreter said in Spanish to appellant, "I think he understands you," and the interpreter left.

But appellant did not leave. He stood about seven feet from Ibarra on the passenger side of Ibarra's car, and he lifted his shirt to display what Ibarra

and A.I. believed was a weapon tucked into a waistband. Although father and son described it differently, they both said the weapon was in a holster and believed it was either a handgun or pistol. This got A.I.'s "heart pumping. I got a little scared. . . . Like he might pull the gun out of the holster and shoot us or something." Ibarra wanted to drive away but still could not; other vehicles were blocking his car. He said that during the minute or so that appellant displayed his weapon, ". . . the game changed. I was in fear for my life. I was in fear for my son's life. . . . The only thing that kept me there was I was completely backed in. . . . I was afraid for my son and my life. I was afraid . . . . I was have [sic] afraid of losing my life that day."

While Ibarra looked for an escape route, appellant harangued him. In Spanish, appellant uttered profanities, asked Ibarra if he was "a faggot," said words to the effect that he should have more respect for people from Jalisco (a state in Mexico).

Then—still in Spanish—appellant said, "I should kill you. I will kill you." Appellant also said, "I ought to kill you and"—pointing to A.I.—"the stupid mother fucker too." Worse yet, appellant said he ought to kill them "*ahorita*," which means "right now." Finally, appellant said, "Now get the fuck out of here." Ibarra obeyed him.

A.I. saw appellant hold up the beer bottle as he was leaving the station. A.I. speaks no Spanish and could not understand what appellant was saying. After appellant lifted up his jacket to display it, A.I. saw what he thought was a silver gun in a black holster. Seeing the weapon made A.I. feel uncomfortable.

Ibarra tried to get a grip on his emotions as he drove away. He had been "scared to death during the whole ordeal." Within about 15 minutes—once he was on the freeway and "out of harm's way"—he called 9-1-1 and told the operator that he was "scared shitless."

The operator told Ibarra to return to the gas station and wait across the street; the police would be approaching in "silent mode." Police Officer William Robinson and his partner interviewed the Ibarras, viewed the surveillance tape, and then searched the area and found appellant within walking distance of the gas station. They detained him until Ibarra identified him. Appellant was not carrying a gun; instead, he had a folding knife with a black

handle. The weapon was in a black nylon holster with a Smith & Wesson logo on it.

2. *The Incident with the Police**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

1. *Substantial Evidence Supports the Conviction Under Count 1*

Appellant contends there was insufficient evidence to support his conviction of making a criminal threat against Ibarra (count 1). Appellant's contention lacks merit.

The standard for appellate review of the sufficiency of the evidence to support a criminal conviction is well established. "Claims challenging the sufficiency of the evidence to uphold a judgment are generally reviewed under the substantial evidence standard. Under that standard, ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' [Citations.] ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citation.]" (*In re George T.* (2004) 33 Cal.4th 620, 630–631 [16 Cal.Rptr.3d 61, 93 P.3d 1007] (*George T.*).) Furthermore, "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].)

 In *George T., supra,* 33 Cal.4th at page 630, the Supreme Court enumerated the elements of a criminal threat under section 422: "The prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of

---

*See footnote, *ante,* page 1342.

actually carrying it out," (3) that the threat—which may be "made verbally"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' [Citation.]" (*Ibid.*; see also § 422.)

We list the above quoted elements below, followed by the reasons why more than substantial evidence supports each such element here:

*First element—willful threat to commit a crime that will result in death or great bodily injury:* There was solid, competent evidence that appellant displayed a weapon and said, "I will kill you."

*Second element—specific intent:* The evidence shows that for up to one minute appellant was close to Ibarra's car, displaying the weapon, making pejorative statements about Ibarra and his son, and saying words to the effect that he could and would kill them. There is no reason for appellant to do what he did and say what he said if he had not had the specific intent that the Ibarras interpret his actions as a threat.

*Third element—unequivocal, unconditional, immediate threat:* Mr. Ibarra testified that appellant not only said, "I will kill you," but said (in Spanish) that he was going to do so "right now." As if to stress the immediacy of his intentions, appellant did not say "*ahora*," which means "now." He said "*ahorita*," which means "right now."[4] Appellant's proximity to the victim and his threatening gesture added weight to his words.

*Fourth element—the threat actually caused sustained, reasonable fear:* Mr. Ibarra testified clearly and more than once that he was horribly scared, and his fright was not fleeting. Regardless of who was at fault during the first confrontation, it had ended. Appellant had driven away. But then appellant circled and returned with the obvious intent of confronting Ibarra again and, this time, frightening him. In light of the (albeit recent) history between these people, appellant amply succeeded. Facing what he thought was a gun and hearing words to the effect that he and his son were about to be killed, Mr. Ibarra was in sustained fear for his and his son's life. The fear lasted not only through the minute or so that appellant stood there exposing his weapon, but for up to 15 minutes after Ibarra drove away. It is entirely reasonable that he would react as he did for as long as he did. That is exactly what appellant wanted to accomplish.

Appellant claims we should not consider the victims' time on the freeway—15 minutes—in calculating the last element—"sustained fear." He

---

[4] <http://www.spanishdict.com/translation> (as of Jan. 11, 2010).

argues that as shown on the security videotape, the threat itself did not exceed 40 seconds.[5] This argument ignores human nature. "Sustained fear" refers to a state of mind. As one court put it, "[d]efining the word 'sustained' [in section 422] by its opposites, we find that it means a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1151, 1156 [40 Cal.Rptr.2d 7] (*Allen*).)[6] The word fear, of course, describes the emotion the victim experiences.

■ In light of the facts and circumstances we have noted, the jury reasonably could have found that appellant's actions created a sustained fear, a state of mind that was certainly more than momentary, fleeting, or transitory. We submit that a person who hears someone say, "I will kill you . . . right now," coupled with seeing a weapon, is quite justified in remaining "scared shitless"—as Mr. Ibarra put it—for 15 minutes. ■ "Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and [his son], is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Allen, supra*, 33 Cal.App.4th at p. 1156.) But even if we accept appellant's argument, we believe that the minute during which Ibarra heard the threat and saw appellant's weapon qualifies as "sustained" under the statute. When one believes he is about to die, a minute is longer than "momentary, fleeting, or transitory." (*Ibid.*)

The facts in this case differ sharply from a good example of momentary fear that is found in *In re Ricky T.* (2001) 87 Cal.App.4th 1132 [105 Cal.Rptr.2d 165], in which a student threatened to "get" a teacher, but made no physical movements or gestures. The teacher responded by sending the student to the school office; the teacher did not call the police until the next day; and there had been no prior history between the defendant and the victim. (*Id.* at pp. 1135–1136.) The court found the teacher's fear to be fleeting. (*Id.* at p. 1140.) As discussed above, the facts here are quite different and constitute substantial evidence to support the guilty verdict on count 1.

2. *Substantial Evidence Supports the Conviction under Count 3**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] Testimony established that appellant's display of the knife lasted a minute or so.

[6] When we consider the totality of the time the victims were in fear, this case is similar to what happened in *Allen*, which held that 15 minutes is more than fleeting. In *Allen*, the defendant used profanity. Then he declared: " 'I'm gonna kill you. I'm gonna kill you and your daughter.' " (*Allen, supra*, 33 Cal.App.4th at p. 1153.) As he spoke he pointed a gun at the victim. Then the defendant left the scene. (*Ibid.*) The victim called the police, who arrested the defendant about 15 minutes later. (*Id.* at pp. 1153, 1155–1156.) Thus, as in this case, the threat did not last 15 minutes, but the fear continued for that period after the defendant had fled.

*See footnote, *ante*, page 1342.

## DISPOSITION

The judgment is affirmed.

Rubin, Acting P. J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 14, 2010, S180209. George, C. J., did not participate therein.