Filed 12/26/13  P. v. Gil CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO GIL,<br><br>    Defendant and Appellant. | A135666<br><br>(Marin County Super. Ct.<br>Nos. SC166588A & SC173882A) |

Defendant Armando Gil was convicted by a jury of making criminal threats.  (Pen. Code, § 422.)[1]  On appeal, he contends that he received ineffective assistance of counsel because his court-appointed attorney failed to request a pinpoint instruction concerning the effect of voluntary intoxication.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This appeal involves two separately filed cases, one of which was tried to a jury verdict and the other of which was resolved by a plea.  Sentencing encompassed both cases.

In case SC166588A, the Marin County District Attorney filed an information on March 29, 2011, charging Gil with one count of rape (§ 261, subd. (a)(2)) and one count of statutory rape (§ 261.5, subd. (c)).  On May 27, 2011, Gil pleaded guilty to statutory rape in exchange for dismissal of the rape charge.

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

In case SC173882A, the Marin County District Attorney filed an information on March 17, 2011, charging Gil with having made criminal threats against Jane Doe (§ 422) on or about December 26, 2010. The case was tried before a jury in May 2011.

Jane Doe, who was 23 years old at the time of trial, testified that Gil had been her boyfriend for nine years. She had his child when she was 17 years old. During the relationship, Gil physically abused her by pulling her hair and by kicking and hitting her. She broke off the relationship when she was 21 years old. When she had been trying to break up with Gil, he once told her that he considered shooting and killing her and then killing himself.

Doe refused to let Gil see their child alone because she did not trust him. In December 2010, Doe and Gil had arranged for him to see their child at her sister's house, but Doe did not drop off the child at her sister's house as planned because she was concerned about the child getting sick.

On December 26, 2010, the day that Gil was scheduled to see his daughter, Doe receive a voicemail message from Gil in which he threatened Doe and her parents after indicating that she was playing games with him. She took the message seriously and went to the police on January 3, 2011. The police made a recording of the message.

After receiving the message, Doe was scared and was watching her back all the time. She would double-check her car after getting off work to make sure no one was in the car. Gil had twice before shown up in her car when she was trying to break up with him. She obtained a protective order against Gil.

A recording of the voicemail message was played to the jury at trial. Except for the greeting in Spanish, the message was in English, which was Gil's second language. The message he left was as follows: "Hola [Jane Doe]. What's up buddy? We agree on something remember. We agreed you were gonna let me see my baby. I think you trying to play with me, you know. Eh, let you know something. I'm gonna hurt you, [Jane Doe], believe me that. I'm gonna hunt you and finish your life too. I'm gonna finish all of your family life, you keep on fuck with me. Don't fuck with me [Jane Doe]. You can

2

call [the police]. I don't give a fuck [Jane Doe]. You aint shit for me. Ha. Believe me [Jane Doe]. Later."

When she first reported the message to police, Jane Doe told the officers that she thought Gil was drunk. She reached that conclusion solely because he appeared to be slurring his words in the message.

Gil's brother was the sole witness for the defense. He testified that he lived with Gil and Doe when they were living together, about four to six years before the trial. He claimed that he never observed any physical altercations between Doe and Gil, although he admitted he was not around the couple all the time.

The jury found Gil guilty as charged of making criminal threats. The court sentenced Gil to an aggregate prison term of three years eight months, consisting of the upper term of three years on the criminal threats count in case number SC173882A, with a consecutive term of eight months on the statutory rape count in case number SC166588A. Gil filed a timely notice of appeal in both cases.

## DISCUSSION

Gil's sole claim of error on appeal is that his trial counsel provided constitutionally ineffective assistance by failing to ask the court to instruct the jury with CALCRIM No. 3426,[2] which concerns the effect of a defendant's voluntary intoxication

---

[2]In its standard form, CALCRIM No. 3426 reads: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted [or failed to do an act] with _____ *<insert specific intent or mental state required, e.g., 'the intent to permanently deprive the owner of his or her property' or 'knowledge that . . .' or 'the intent to do the act required.'>* [¶] A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] [Do not consider evidence of intoxication in deciding whether _____ *[insert non-target offense>* was a natural and probable consequence of _____ *<insert target offense>.*] [¶] In connection with the charge of _____ *<insert first charged offense requiring specific intent or mental state>* the People have the burden of proving beyond a reasonable doubt that the defendant acted [or failed to act] with _____ *<insert specific intent or mental state required, e.g., 'the intent to permanently deprive the owner of his or her property'*

3

upon the ability to form the specific intent to commit a crime. As we explain, because the evidence was insufficient to justify giving the instruction, counsel's performance was not constitutionally deficient. Further, even assuming counsel's performance was deficient, Gil's claim fails because he cannot demonstrate a reasonable probability the outcome would have been any different if his counsel had requested the instruction.

**1.     *Background***

Gil's trial counsel elicited the following testimony from Doe at trial:

"[DEFENSE COUNSEL]:  Q.     One of the things that happened when you showed the -- or when you played your phone message to the officer at the San Rafael Police Station, first thing you said is:  He's drunk.  Because you believed that Mr. Gil was drunk; isn't that right?

"A.     I believe that he was drunk.  I do not know since I was not there with him. I don't know if he had been drinking, but I did assume he was drinking.

"Q.     In fact you said that twice; isn't that right?

"A.     Correct.

"Q.     Because his words sounded slurred?  [¶] . . . [¶]

"A.     Correct, but it was still a clear message."

The defense did not present any other testimony or evidence suggesting that Gil was intoxicated at the time he left the threatening voicemail message for Doe.  It is undisputed that Gil's defense counsel did not request a jury instruction on the effect of voluntary intoxication.  It is further undisputed that no such instruction was delivered to the jury.

---

or 'knowledge that . . .'>.  If the People have not met this burden, you must find the defendant not guilty of _____ <insert first charged offense requiring specific intent or mental state>."  [¶]  <Repeat this paragraph for each offense requiring specific intent or a specific mental state.>  [¶]  You may not consider evidence of voluntary intoxication for any other purpose.  [Voluntary intoxication is not a defense to _____ <insert general intent offense[s]>.]

4

During closing argument, Gil's defense counsel emphasized that Gil lacked the specific intent to make a criminal threat because he was drunk, as follows: "[The message is] hard to understand. You can listen to it in the back. It is somebody who is drunk. It is more like a rant, more like a venting, not anything like a threat. . . . There is no specific intent. It is not meant to be taken as a threat, because you need that specific intent that it be meant as a threat. He's drunk. She knows him to be drunk. And, No. 2, it has to be with a specific intent. And from her mouth twice she says, He's drunk."

**2.    *Governing Legal Principles***

Section 29.4, subdivision (b) provides in relevant part that "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent . . . ." Voluntary intoxication may negate the existence of a specific intent. (See *People v. Williams* (1997) 16 Cal.4th 635, 677.) Making criminal threats in violation of section 422 is a specific intent crime that requires a showing that the defendant intended the statements to be taken as a threat, even if there is no intent to carry out the threat. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347.)

A trial court must instruct the jury sua sponte on the general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case. (*People v. Moye* (2009) 47 Cal.4th 537, 548; *People v. Breverman* (1998) 19 Cal.4th 142, 154.) A trial court is not obligated, however, to instruct sua sponte on voluntary intoxication. Voluntary "[i]ntoxication is now relevant [after diminished capacity was abolished as a defense] only to the extent that it bears on the question of whether the defendant actually had the requisite specific mental state. Thus it is now more like the 'pinpoint' instructions . . . to which a defendant is entitled upon request. Such instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi. [Citation.] They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119, citations omitted.) A defendant is entitled to a voluntary

5

intoxication instruction only when there is substantial evidence of the following: (1) the defendant was voluntarily intoxicated, and (2) "the intoxication affected the defendant's 'actual formation of specific intent.' " (*People v. Williams, supra,* 16 Cal.4th at p. 677.)

In this case, the claim is not that the trial court erred in refusing a voluntary intoxication instruction but that defense counsel was ineffective for failing to request the instruction. In order to establish a claim of ineffective assistance of counsel, a defendant bears the burden of demonstrating both that counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694; *People v. Ledesma* (2006) 39 Cal.4th 641, 746.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

"Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Ledesma, supra,* 39 Cal.4th at p. 746.) A failure to make a futile or nonmeritorious motion does not constitute ineffective assistance. (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)

**3.** *Analysis*

Gil argues that his counsel's performance was constitutionally defective because there could be no conceivable tactical reason for failing to request an instruction on voluntary intoxication. We disagree. A conceivable tactical reason for declining to ask for the instruction is that defense counsel believed the evidence was insufficient to justify giving the instruction.

There was no substantial evidence to show either that Gil was voluntarily intoxicated or that his purported state of intoxication prevented him from forming the requisite specific intent. The only evidence of Gil's intoxication was Doe's testimony that she believed Gil was drunk at the time he left the voicemail message. However, her assumption was based solely on the fact that he appeared to be slurring his words. She clarified that she did not know whether Gil had been drinking. She did not observe Gil drinking on the day the message was left, had no personal interaction with him at the time the message was left, and had no other basis on which to conclude that Gil had been drinking or was intoxicated. Moreover, Gil did not testify, there was no third party testimony concerning Gil's condition when he made the phone call, and there was no physical evidence that he used alcohol or drugs before making the call. Such generalized testimony about a defendant's condition based solely on the defendant's manner of speech does not warrant a voluntary intoxication instruction. (See, e.g., *People v. Williams, supra,* 16 Cal.4th at p. 677 [scant evidence that defendant was " 'doped up' " and " 'probably spaced out' " did not qualify as substantial evidence of intoxication].)

Further, even if there were substantial evidence of intoxication, there was insufficient evidence that Gil was unable to form the specific intent to commit the crime of making criminal threats. (See *People v. Marshall* (1996) 13 Cal.4th 799, 847-848 [even though defendant was intoxicated, evidence of the effect on his state of mind was lacking].) Gil was able to leave a message that contained a coherent and direct threat, rather than a confused and rambling statement. On appeal, Gil makes much of the fact that Doe, who had been his girlfriend for nine years, was in a unique position to know when he was drunk. However, by the same token, she was presumably also in a unique position to know when Gil was too drunk to be taken seriously. Although Doe claimed Gil was drunk, she also stated that his message was "clear." From her perspective, the message was not a rambling and incoherent diatribe. Rather, she was fearful of him and believed that he intended his message to be taken as a threat.

Under these circumstances, there was insufficient evidence to warrant an instruction on voluntary intoxication. Gil's trial counsel did not provide constitutionally

7

defective assistance by failing to request the instruction, which the trial court would have properly refused.

In any event, Gil cannot demonstrate a reasonable probability the outcome would have been any more favorable if the voluntary intoxication instruction had been given to the jury. The omission of the instruction did not remove from the jury's consideration or incorrectly define the elements of the charged offense. The trial court instructed the jury on the law applicable to the evidence presented, including the mental state and specific intent required to establish the crime of making criminal threats. In addition, defense counsel maintained in closing argument that Gil's drunken state prevented him from forming the specific intent required to support a conviction for making criminal threats. Therefore, the jury had before it the purported evidence of Gil's intoxication and was urged by Gil's counsel to consider it when deciding whether he acted with the requisite intent. Nevertheless, the jury rejected the argument. The fallacy in Gil's argument is that the only person who offered evidence about his supposedly intoxicated state—Doe—also testified that she took the threat seriously and was fearful of him. Plainly, if she took the threat seriously, she did not believe he was so intoxicated that he lacked the intent to have his message be taken as a threat. A pinpoint instruction on the effect of voluntary intoxication would not have altered this fundamental fact. Consequently, there is no reason to believe Gil was prejudiced by the absence of the instruction.

Because we conclude Gil has not demonstrated that his counsel's performance was constitutionally deficient or that he was prejudiced as a consequence of his counsel's failure to request CALCRIM No. 3426, we reject his claim of ineffective assistance of counsel.

**DISPOSITION**

The judgment is affirmed.

                             _____
                             McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.

9