Filed 3/20/25  P. v. Rubino CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. BRAD RUBINO, Defendant and Appellant. | D083590 (Super. Ct. No. SCE410434) |

APPEAL from a judgment of the Superior Court of San Diego County, Sherry M. Thompson-Taylor, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Brad Rubino guilty of one count of making a criminal threat. (Pen. Code,[1] § 422.) The trial court placed Rubino on two years formal probation.

Rubino contends that insufficient evidence supports his conviction. We conclude that Rubino's challenge to the sufficiency of the evidence lacks merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Rubino was convicted of making a criminal threat to H.R.[2] The two men had grown up together as close friends and neighbors, whose fathers were business partners. In the years leading up to the instant incident, the relationship between Rubino and H.R. had deteriorated. Rubino was angry at H.R. based on his belief that H.R. had stolen tools from him several years earlier. Rubino also had negative feelings toward H.R.'s father (Father) because of Father's recent business dealings with Rubino's father.

At the time of the incident, Rubino was living in the house where he grew up, with a backyard that adjoined the backyard of Father's house. H.R. was visiting Father's house at the time. Rubino drove to the front gate of Father's house and started yelling through the driveway gate, in the presence of both H.R. and Father.

Witnesses at trial gave different accounts of what Rubino said during the incident at the front gate. According to H.R., Rubino was yelling obscenities, accusing H.R. of stealing tools, and stating that he was going to

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]    We refer to H.R. by his initials to protect his privacy.

kill both H.R. and Father. Father similarly testified that Rubino used obscenities and threatened to shoot him and "kill you guys." Both Father and H.R. described Rubino as "out of control." A neighbor who witnessed the incident at the front gate heard Rubino say "I'm going to kill you" in those or similar words. Another neighbor, who could hear the incident at the front gate, heard someone yell obscenities and state "I'll kill you. I'll kill you both." At some point that neighbor also heard Rubino refer to using a firearm when he said "Let's go. Bring it on. Do you want the AR-15 or the 45?"

Rubino admitted to yelling profanity and making insults toward H.R. at the front gate to try to draw him out and confront him about the allegedly stolen tools. However, Rubino denied that he threatened to kill or shoot H.R. or Father. Rubino's friend, who drove with Rubino to the front gate, heard Rubino tell H.R. that he wanted to "beat him up" and "take his family down," but he did not hear Rubino threaten to shoot or kill H.R.

The incident at the front gate lasted approximately 10 minutes. Rubino then drove to his own house and went to his backyard, near the property line with Father's backyard, where a three-foot tall fence separated the properties. There, Rubino continued to yell at H.R. and Father. H.R. made a video recording of some of Rubino's statements in the backyard. In the video, Rubino used extensive profanity and at one point threated to "fucking beat the shit outta you." Father and H.R. both testified that in statements that were not captured on the video, Rubino again threatened to kill them. Rubino testified that he made no such threats.

In response to a 911 call by Father, sheriff's deputies arrived at Father's house a short time later. While the deputies were at Father's house, Rubino made phone calls to Father. During the calls, Rubino was on the phone's speaker, and he addressed both Father and the deputies. A portion

3

of the conversation was recorded on the deputies' body worn cameras. Rubino informed the deputies that he owned firearms and suggested that if they came to his house, there would be a violent encounter. Rubino told Father, "I could give a flying fuck if I take my last breath . . . tonight," and "[n]o one's in this house except for me, my ammo, my guns, and my vest." Referring to H.R., Rubino also stated to Father, "I'm gonna choke him out until he pays me my money."

The next day, after a detective obtained a search warrant and gun violence restraining order against Rubino, a SWAT team searched Rubino's home. They recovered 11 firearms, including five rifles, four pistols, and two shotguns, together with a large supply of ammunition and a bulletproof vest.

Rubino was charged with two counts of making a criminal threat. (§ 422.) Count 1 specified Father as the victim. Count 2 specified H.R. as the victim.

The jury was unable to reach a verdict on the charge in count 1 that Rubino made a criminal threat against Father. A mistrial was declared on that count, and it was subsequently dismissed. However, the jury did find Rubino guilty in count 2 of making a criminal threat against H.R.

Rubino was placed on two years of formal probation, with a suspended 180-day jail term.

## II.
## DISCUSSION

Rubino's sole contention on appeal is that insufficient evidence supports his conviction for making a criminal threat against H.R.

### A.   *Standard of Review*

In evaluating Rubino's challenge to the sufficiency of the evidence, "we must ' "review the entire record in the light most favorable to the judgment," '

4

and then determine whether it contains ' "evidence that is reasonable, credible, and of solid value" ' such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. . . . '[S]ufficiency determinations necessarily take account of the "standard of proof that applied before the trial court." ' . . . '[T]hat is why in criminal cases we must ensure the record demonstrates substantial evidence to establish guilt beyond a reasonable doubt.' [¶] . . . We must ' "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence . . . '. . . for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' . . . But we cannot, however, venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record. ' "[A] reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' . . . It 'must logically flow from other facts established in the action,' and it cannot be 'based entirely on the suspicions of the officers involved in the case and the conjecture of the prosecution.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167–168, citations omitted].)

B.    *Applicable Legal Standards*

Section 422, subdivision (a) provides, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of

execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished . . . ."

The statutory language gives rise to five elements that must be proven. "To establish a criminal threat, the prosecution must prove: (1) the defendant willfully threatened death or great bodily injury to another person; (2) the threat was made with the specific intent that it be taken as a threat, regardless of the defendant's intent to carry it out; (3) the threat was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution'; (4) the threat caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety'; and (5) this fear was reasonable under the circumstances." (*People v. Turner* (2020) 10 Cal.5th 786, 826.) " ' "[A]ll of the surrounding circumstances should be taken into account to determine if a threat falls within the proscription of section 422." ' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 631.)

C.      *Rubino's Contentions*

Rubino challenges the sufficiency of the evidence to support the third and fourth elements needed for a conviction under section 422. We consider each in turn.

1.      *Immediacy of Threat*

Rubino first argues that the evidence was insufficient to support a finding that the threat was "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).)

6

Rubino's entire argument on the issue in his opening appellate brief consists of the following: "No evidence shows [Rubino] ever attempted to climb, open, or bypass the front gate or backyard fence. No evidence showed [Rubino] was armed at [Father] and [H.R.'s] house[,] and even if the jury believed that [Rubino] threatened to choke [H.R.], the evidence showed at all times [H.R.] remained far away and on the other side of a physical barrier. [¶] No evidence shows [Rubino] was ever armed or ever within 50 feet of [H.R.] during the confrontation. [Citation.] It was physically impossible for [Rubino] to touch [H.R.] or discharge a projectile, as he was not armed. Accordingly, there was no immediate prospect of any threat being carried out."[3]

As we understand the crux of Rubino's argument, he contends that the threat was not sufficient to satisfy the third statutory element because he could not have carried out the threat at the moment he was making it. Specifically, he was not armed while making the threats, and he was behind either the front gate or the backyard fence.

The argument fails because "section 422 does not require an immediate ability . . . to carry out the threat." (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 809.) Instead, the word "immediate" in the statute means "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 (*Melhado*).) The statute was not "intended to place a limited timeline on when a specific and unconditional threat would be executed." (*People v. Wilson* (2010) 186 Cal.App.4th 789, 816.) Moreover, a threat " 'is not insufficient simply

---

3    The argument is not addressed at all in Rubino's appellate reply brief.

because it does "not communicate a time or precise manner of execution.' " (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1431–1432.)

Here, there was evidence that Rubino made threats to kill, beat up and choke H.R., and to kill and shoot Father. Although Rubino did not brandish a firearm during the incident, he had access to numerous firearms at his home, which was a fact known to H.R. A neighbor heard Rubino specifically express an intention to use one of his firearms during the incident, by asking "[d]o you want the AR-15 or the 45?" There was clear line of sight from Rubino's backyard into Father's living room. Moreover, Rubino testified he knew how to open the front gate of Father's house because he had done so many times before, and he could access Father's backyard over the low fence or through a gate. As Rubino testified, "I know how to access the property at any point in time." Thus, although Rubino did not end up entering Father's property during the incident, Rubino had the ability to do so. Further, because Rubino was "out of control" during the incident and clearly very angry, it was reasonable for H.R. to form the belief that Rubino intended to act on the threats.

Based on those facts, although Rubino did not ultimately take steps to execute his threats, substantial evidence supports a finding that H.R. could reasonably understand Rubino's threats of physical harm as conveying a sufficient "degree of seriousness and imminence" that they would be carried out. (*Melhado, supra*, 60 Cal.App.4th at p. 1538.) Therefore, we find no merit to Rubino's challenge to the sufficiency of the evidence to support the third element of making a criminal threat in violation of section 422.

8

2. *Sustained Fear*

Rubino next contends that insufficient evidence supports a finding that, as a result of his threats, H.R. was "in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422, subd. (a).)

The element of sustained fear in section 422 "requires proof of a mental element in the victim." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The word fear, of course, describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) "Fear is "sustained" when it involves "a period of time that extends beyond what is momentary, fleeting, or transitory." (*Allen*, at p. 1156.)

Rubino does not take issue with whether H.R.'s fear was *sustained*. Instead, he takes issue with whether H.R. was afraid *at all* during the incident. Rubino argues the evidence was insufficient to support a finding that H.R. was afraid because "the evidence showed that [H.R.] *prolonged and provoked* the confrontation with [Rubino]." According to Rubino, because H.R. provoked him during the incident, H.R. must not have "experienc[ed] fear for his and his family's safety." Further, according to Rubino, it was only Father "who testified to being very scared," not Rubino.

Rubino's argument lacks merit because it was *not* only Father who testified to being scared. H.R. testified that, due to Rubino's threats, he was "scared" for his parents, and "very worried" about his parents' safety. Rubino would have us reject that testimony because H.R. purportedly provoked and prolonged the confrontation and thus must not have been afraid. However, in making this argument, Rubino is impermissibly asking us to reweigh the evidence and make credibility determinations. (*People v. Davis* (2023) 87 Cal.App.5th 771, 779 ["As a reviewing court, we can neither reweigh evidence nor reevaluate a witness's credibility."].) It was the jury's call to

9

make, not ours, whether H.R.'s testimony about his state of mind should be credited in light of the other evidence presented at trial. Based on H.R.'s testimony about his state of mind and based on the facts we have described above, including Rubino's out-of-control and angry behavior, his access to firearms, his line of sight to Father's living room, and his ability to physically enter Father's property, there were ample reasons for the jury to conclude that H.R. did, in fact, fear "for his . . . own safety or for his . . . immediate family's safety" (§ 422, subd. (a)) as a result of Rubino's threats.

Further, Rubino's argument relies on the factual premise that "[H.R.] *prolonged and provoked* the confrontation with [Rubino]." However, the evidence on that point at trial was disputed, and the jury could have concluded that H.R. did not engage in such conduct. Rubino and his friend testified that H.R. instigated the confrontation in the backyard by yelling at Rubino from Father's backyard as soon as Rubino arrived home. However, both H.R. and Father denied that any such thing occurred. According to them, Rubino was the one who started yelling in the backyard while they were inside the house, and they did not remember that H.R. said anything at all in the backyard. Indeed, H.R. testified that the only actions he took during the incident that might have provoked Rubino were to "flip him off" at the front gate and to record a video of Rubino in the backyard. The jury reasonably could have concluded that the events occurred as H.R. and Father described them.

In sum, there is no merit to Rubino's contention that insufficient evidence supports a finding that H.R. experienced sustained fear as a result of Rubino's threats.

## DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:


DATO, J.


KELETY, J.