Filed 11/19/25  P. v. Armour CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C100673 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE005979) |
| v. | |
| RYAN EUGENE ARMOUR, | |
| Defendant and Appellant. | |

In January 2024, a jury found defendant Ryan Eugene Armour guilty of two drug-related charges, two counts of making criminal threats, and two counts of brandishing an imitation firearm.  The trial court sentenced defendant to an aggregate term of two years eight months in state prison.  On appeal, defendant claims there was insufficient evidence to convict him on the charges for making criminal threats or brandishing an imitation firearm.

We conclude that substantial evidence supports each of his convictions and affirm the judgment.  We did find an error in the abstract of judgment, which we will direct the trial court to correct.

1

BACKGROUND

A.     *Underlying Facts and Charges*

On April 3, 2021, neighbors J.C.[1] and D.M. stood on the sidewalk outside their homes, talking to each other.  As they were talking, defendant drove his truck around the corner and onto their street at a high rate of speed, the truck's tires squealing.  Defendant sped to the end of the cul-de-sac and turned around.  As he sped past the neighbors again, D.M. yelled, "[s]low the fuck down."  Defendant "[s]lammed on the brakes."  J.C. heard defendant scream, "I'll kill you . . . . I'll air you out."  Then he saw defendant "put [a] gun out of the window."  J.C. took a picture of the gun and told defendant he was going to jail.  As defendant sped off, J.C. called 911.

In his call to 911, J.C. told the "dispatcher" that defendant "pulled a pistol out and said he'll kill us or something or air us out."  When asked, J.C. described the gun as a "black and gray semiautomatic pistol."  Police officers quickly found defendant on a nearby street doing yard work and arrested him.  In a search of the truck defendant was driving,[2] the officers found a BB gun, methamphetamine, and a capped hypodermic needle.

The People subsequently charged defendant with making a criminal threat against D.M. (Pen. Code,[3] § 422—count one), making a criminal threat against J.C. (§ 422—count two), brandishing an imitation firearm at D.M. (§ 417.4—count three), brandishing an imitation firearm at J.C. (§ 417.4—count four), unlawful possession of methamphetamine (Health and Saf. Code, § 11377, subd. (a)—count five), and unlawful

---

[1]     To protect their privacy, we will refer to the victims by their initials.  (Cal. Rules of Court, rule 8.90(a)(1) & (b)(4).)

[2]     The truck belonged to defendant's employer.

[3]     Further undesignated section references are to the Penal Code.

possession of drug paraphernalia (Health and Saf. Code, § 11364—count six).  The People also alleged a prior strike conviction and numerous aggravating circumstances.

B.    *Trial*

Defendant's trial began in January 2024.  J.C. testified that he did not know what defendant meant when he said, "I'll air you out," but he understood what defendant meant by "I will kill you." J.C. heard the threat, saw the gun, and was scared; he did not want to die.  He thought defendant was "gonna start shooting."  J.C. described the gun as "square and it . . . looked like a semiautomatic and it was black and silver."  A gun owner himself, J.C. believed the gun was real:  "[T]his looked absolutely, 100 percent like a semiautomatic weapon to me."  Also, his children have BB or Airsoft guns, and their toy guns have orange tips.  The gun defendant waved at him did not have an orange tip.

During cross-examination, J.C. testified that he may have yelled out to defendant, "[a]re you gonna shoot me with the BB gun," but he could not recall.  He only remembered yelling out that defendant was going to jail:  "I really didn't say too much.  It happened so fast.  Everybody was pretty scared.  Except for the guy with the gun."  J.C. explained:  "At first, you know–you know, you see a gun, you think it's a real gun.  [¶]  Now, if I had nervously said something or something that I don't recall, but I thought it was a real gun.  It looked like a real gun to me."  He thought the encounter lasted about a minute.

J.C. was also asked on cross-examination whether he was scared when defendant drove away.  J.C. responded:  "Not really.  Just during."  J.C. later clarified that he was scared while defendant was there, even after defendant put the gun down.  He was not, however, scared after defendant drove away.

D.M. also testified at trial.  He admitted yelling at defendant to "[s]low the fuck down."  But he was shocked when defendant stopped his truck and became "verbally abusive."  He saw defendant "digging around for something in his truck," and he heard defendant say, " 'I'm gonna air you.' "  D.M. remembered hearing J.C. say, " 'What are

3

you gonna do? You know, shoot me with that BB gun?' " Defendant continued to yell at them, and D.M. "retreated very quickly." D.M. explained: "I don't want to get shot, quite frankly. You know, somebody starts talking about airing you and somebody else is talking about anything to do with a gun, I'm not sticking around to find out if he's really got one or not. I don't care. [¶] I wasn't being confrontational. I was in a situation where it went from complete shock and surprise to Oh shit, in about, you know, two seconds." D.M. did not understand specifically what "I'll air you out" meant, but he "took it as a threat." To D.M., it "had the connotation of making me into air, which would be I'm not here."

D.M. remembered that, on the day of the incident, he told the police he thought defendant had a gun; however, by the time of trial, he did not remember seeing a gun. D.M. explained that he was "responding to what was going on around [him]. The fact that [defendant] was reaching for something, talking about airing me, and J.C. was talking about a BB gun made me-I don't know, made me do a little algebra and put it together and get the hell out of there." He did not remember seeing the gun, but he remembered that he was scared and wanted to get away as quickly as possible. D.M. backed away from defendant but did not turn from him, walking quickly backward toward his house.

On cross-examination, D.M. testified that he did not hear defendant say, "I'm going to kill you," only "I'm going to air you." And, when asked whether he ever saw a gun, D.M. said, "I'm very clear that I cannot say I saw anything in his hand. Whatever he had was here, and I was facing his back." D.M. testified that he never saw defendant "put his arm out of the window with a gun in his hand." D.M. also testified it was not his idea to call the police: "No. I don't call the police. I'm Italian. [¶] We don't call the police."

4

On re-direct, D.M. clarified that, because they were standing in different places, J.C. could have seen something that D.M. would not have been able to see. He thought the entire incident had taken no longer than a minute.

Officer Braden Kelly also testified. He interviewed D.M. on the day of the incident. D.M. told Officer Kelly that defendant had a gun. D.M. thought defendant may have been holding a pipe or a wrench, but he heard defendant say, "I'm gonna air you," so D.M. believed it was a gun. After reviewing his body cam footage from the day of the incident, Officer Kelly recalled D.M. telling him that J.C. said something about a BB gun. He did not, however, include that in his report. Officer Kelly did not interview J.C.

Officer Jason Miller testified that, after defendant's truck was located, he parked down the street from it. He then worked with other law enforcement to formulate a plan for apprehending defendant, whom they believed was armed. After detaining defendant, police officers searched the truck he was driving and found a BB gun, methamphetamine, and a pipe.

Officer Cody Nguyen testified there were no visual cues that the firearm they found was not real; he did not know it was "fake" until he picked it up and "pulled the slide back." The imitation firearm had a metal slide, a metal trigger, and a polymer-plastic frame. It did not have an orange tip.

C.     *Conviction and Sentence*

On January 30, 2024, the jury found defendant guilty as charged. In a bifurcated trial, the jury also found true the alleged aggravating circumstances.

Before sentencing, defendant filed a motion for a new trial, a *Romero*[4] motion, and a motion to reduce counts one and two to misdemeanors.

---

[4]     *People v. Superior Court* (1996) 13 Cal.4th 497 (*Romero*).

5

During the March 15, 2024, sentencing hearing, the trial court denied defendant's motion for a new trial. The court also denied defendant's motion to reduce counts one and two to misdemeanors. The court granted defendant's *Romero* motion but denied his request for probation and sentenced defendant to an aggregate term of two years eight months in state prison: The middle term of two years on count one and a consecutive eight-month term on count two (one-third the middle term).

For each of defendant's convictions on counts three and four, the trial court imposed a 180-day term in county jail; the court stayed those terms pursuant to section 654. The court imposed a concurrent 15-day sentence on count six and no additional jail time for the conviction on count five.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant challenges all but his two drug-related convictions based on insufficiency of the evidence. As we explain below, there is sufficient evidence to sustain those convictions, and we affirm the judgment accordingly.

### I

### *Standard of Review*

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We presume " ' "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid.*) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

6

## II

### *Making Criminal Threats*

A.    *Legal Principles*

To "prove a violation of section 422, the prosecution must establish all of the following:  (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances."  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

"Sustained fear" involves both the emotion the victim experienced and the time during which they experienced it.  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).)  To be sustained, the fear must last " 'a period of time that extends beyond what is momentary, fleeting, or transitory' " (*ibid.*; *People v. Wilson* (2015) 234 Cal.App.4th 193, 201), and ordinarily lasts "beyond the moments of the encounter" (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140 (*Ricky T.*)).  However, "a victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than 'momentary, fleeting, or transitory.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634.)  Indeed, depending on the circumstances, even one minute can be enough time.  (*Fierro,* at p. 1349.)

7

B.  *Analysis*

1.  *Count One—D.M.*

Defendant contends there is insufficient evidence to sustain his conviction for making criminal threats against D.M. (count one).  He challenges nearly every element of section 422.  We are not persuaded.

Defendant sped through D.M.'s neighborhood.  D.M. yelled at him to "[s]low the fuck down."  In response, defendant slammed on his brakes and yelled out to D.M., "I will air you out," while rooting around in his truck for something.  D.M. heard J.C. yell something about a BB gun.  And, although it is unclear what "I will air you out" actually was intended to convey, when heard in this context, it is reasonable for a jury to understand it as a threat to harm or kill D.M.  (See *In re Ryan D.* (2002) 100 Cal.App.4th 854, 860 [ambiguous statements taken in context can be understood as a threat].)  Based on these circumstances, a jury also could reasonably have concluded this was more than just an emotional outburst or angry utterance; it was an attempt to instill fear.  (*Id.* at p. 861.)

A jury also could reasonably have concluded that D.M. was afraid, and his fear was both reasonable and sustained.  D.M. testified that the incident lasted about a minute, and he was scared for the duration.  D.M. was uncertain whether defendant had a real gun, but he was scared defendant intended to shoot him, and he did not want to "stick around" to find out.  So, he quickly retreated toward his home, walking backward to keep his eyes on defendant.  Based on this evidence, a reasonable jury could conclude that D.M.'s fear was not momentary or fleeting but sustained.  (See *Fierro, supra*, 180 Cal.App.4th at p. 1349 ["When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory' "].)

Moreover, although D.M. had never before heard the phrase, "I will air you out," he believed it "had the connotation of making me into air, which would be I'm not here." In other words, what D.M. heard was that defendant intended to kill him.  He believed

8

defendant had a gun and intended to use it. There can be no doubt that, under the circumstances, his fear was reasonable.

Defendant's claim on appeal relies largely on his assertion that a violation of section 422 cannot lie if the victim "initiated the confrontation" or at some level "participated" in the encounter. To support his claim, defendant relies on the decision in *Ricky T.*

In *Ricky T.*, the appellate court reversed a high school student's adjudication for criminal threats. (*Ricky T., supra*, 87 Cal.App.4th at pp. 1136-1141.) In that case, the student yelled at his teacher, " 'I'm going to get you' " or " 'I'm going to kick your ass' " after the teacher accidentally hit the student with a classroom door. (*Id*. at pp. 1135-1136.) Although the teacher felt physically threatened by the student, he admitted that the student did not make a specific threat or engage in any other aggressive behavior. (*Id*. at p. 1135.) In reaching its decision, the appellate court considered the entire context of the student's conduct and concluded the student's "intemperate, rude, and insolent remarks," unaccompanied by any show of physical violence, were not sufficient to demonstrate that a criminal threat was made. (*Id.* at pp. 1138-1139.)

The *Ricky T.* court did not, as defendant suggests, reverse the juvenile court's decision simply because the student initiated the exchange or participated in the encounter. (*Ricky T., supra*, 87 Cal.App.4th at pp. 1138-1139.) Moreover, unlike the student in *Ricky T.*, here defendant acted aggressively—slamming on his brakes, yelling at D.M., and rooting around in his truck for what D.M. feared may be a weapon.

Viewing the evidence in a light most favorable to the judgment, as we must, we conclude it amply supports the jury's verdict.

2.      *Count Two—J.C.*

Defendant also contends there is insufficient evidence to sustain his conviction for making criminal threats against J.C. (count two). Again, we are not persuaded.

9

There is solid, competent evidence that defendant said to J.C. "I will air you out. I will kill you." D.M. may have testified that he did not hear defendant say, "I will kill you," but J.C. heard it, and his testimony alone is sufficient to prove that fact. (See Evid. Code, § 411 ["[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact]"; see *People v. Cuevas* (1995) 12 Cal.4th 252, 262; *People v. Scott* (2002) 100 Cal.App.4th 1060, 1064.) And, contrary to defendant's suggestion, saying, "I will kill you," is as clear, immediate, and specific a criminal threat as there can be.

As we discussed *ante*, the evidence unequivocally demonstrates that, in response to D.M. telling him to "[s]low the fuck down," defendant slammed on his brakes, and for approximately one minute, engaged D.M. and J.C. in a verbal altercation. During their verbal altercation, J.C. heard defendant yell, "I will air you out. I will kill you," while holding what appeared to J.C. to be a real gun. There is no reason for defendant to do what he did and say what he said if he did not specifically intend for J.C. to interpret that statement as a threat. (See *Fierro, supra*, 180 Cal.App.4th at p. 1348.)

In addition, J.C. testified that he was afraid for his life for the duration of the incident, which lasted about one minute. As we discussed *ante*, fearing for one's life, sustained even for just a minute, is more than "momentary, fleeting, or transitory." (See *People v. Brugman, supra*, 62 Cal.App.5th at p. 634; see also *Fierro, supra*, 180 Cal.App.4th at p. 1349; see also *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) J.C. saw defendant display what appeared to be a real gun while yelling, "I will air you out. I will kill you." J.C. was afraid defendant intended to kill him. Based on this evidence, a reasonable jury could conclude that J.C.'s fear was not momentary or fleeting but sustained. The same evidence also supports a finding that J.C.'s fear was reasonable.

As with his conviction for making criminal threats against D.M., defendant argues that because J.C. engaged with him during the incident, a section 422 violation cannot be

proven, and he relies on *Ricky T.* to support his argument. Again, the circumstances here are not like those presented to the court in *Ricky T.* Defendant is not a child acting out after being accidentally hit in the head by his teacher, opening a door. (*Ricky T., supra*, 87 Cal.App.4th at pp. 1135-1136.) Defendant is an adult who, in response to being told to slow down in a residential neighborhood, slammed on his brakes, brandished what appeared to be a gun, and threatened to kill someone. The decision in *Ricky T.* offers defendant no support.

Viewing the evidence in a light most favorable to the judgment, as we are required to do, we conclude that substantial evidence supports defendant's conviction on count two.

### III

### *Brandishing an Imitation Firearm*

The offense of brandishing an imitation firearm requires proof that the defendant drew or exhibited "an imitation firearm . . . in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm." (§ 417.4; see *In re Michael D.* (2002) 100 Cal.App.4th 115, 120.) Defendant contends there is insufficient evidence to demonstrate that either victim reasonably feared harm. We disagree.

As to the brandishing charge involving J.C. (count four), J.C. saw the imitation firearm, believed it was real, and heard defendant say, "I will air you out. I will kill you." Any reasonable person would be afraid. (See *In re Michael D., supra*, 100 Cal.App.4th at p.126 [seeing a teenage boy pointing an imitation firearm at a younger boy was sufficient evidence to prove a reasonable bystander would have felt fear].) And, contrary to defendant's unsupported claim on appeal, J.C. yelling out "you are going to jail" does not undermine that conclusion.

As to the charge involving D.M. (count three), defendant contends there was insufficient evidence to sustain the conviction because D.M. "never saw [defendant]

11

holding the BB gun." It is accurate to say that D.M. testified he did not see the imitation firearm; however, Officer Kelly testified that on the day of the incident, D.M. reported seeing what he believed was a gun. Such a conflict in evidence must be resolved in favor of the judgment. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.) Thus, assuming without deciding that a victim must see an imitation firearm in order for a violation of section 417.4 to lie, substantial evidence supports the judgment.

## IV

### *Clerical Errors*

We have identified a clerical error in the March 15, 2024, abstract of judgment that requires correction. In section 1 of the abstract, in the column identifying the date of defendant's conviction, the trial court clerk twice recorded the date as "1/30/21." This is incorrect; the jury's verdict was entered on January 30, 2024, and defendant was sentenced on March 15, 2024. Whether the trial court clerk intended to record the date of the verdict, or the date defendant was sentenced, the clerk failed to correctly record either. We shall direct the trial court to correct the abstract accordingly. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may order correction of clerical errors in the abstract of judgment].)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment so that it accurately reflects the date of defendant's conviction. The trial court clerk shall forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

\s\
Krause, J.

We concur:

\s\
Earl, P. J.

\s\
Wiseman, J.*

---

\*    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13