Filed 7/1/25  P. v. Barraza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083407 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD292292) |
| ROBERT BARRAZA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Eric A. Swenson, Supervising Deputy Attorney General and Heather M. Clark, Deputy Attorney General for Plaintiff and Respondent.

A jury convicted Robert Barraza[1] of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); count 1) and making a criminal threat (§ 422; count 2). The court dismissed under section 1385 a prior carjacking conviction (§ 215, subd. (a)) that the People had alleged constituted both a serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and a strike (§§ 667, subds. (b)-(i), 668, 1170.12).[3] It also revoked Barraza's probation in case Nos. SCN416335 and SCD287338. The court sentenced Barraza to an aggregate determinate term of four years eight months in state prison, consisting of a three-year midterm in case No. SCN416335, eight months (one third the midterm) in case No. SCD287338, a consecutive one-year term (one third the midterm) on the count 1 assault and a concurrent two-year midterm on the count 2 criminal threat.

Barraza contends insufficient evidence supports her criminal threat conviction because there is no evidence either recipient of the threat experienced sustained fear, that is, fear that extended beyond what is momentary, fleeting or transitory. We affirm.

FACTUAL BACKGROUND

In October 2021, D.H. and V.G. were working as security officers at a San Diego-based homeless shelter and service center. V.G. and another officer began to conduct outside patrol around 6:00 or 7:00 a.m., and encountered Barraza sleeping in front of the main doors to the facility,

---

[1] At trial, Barraza asked to be referenced by feminine pronouns. The parties used such pronouns when referring to Barraza in their appellate briefs. We do so in this opinion as well.

[2] Undesignated statutory references are to the Penal Code.

[3] The parties had not addressed the prior conviction allegations before the jury was excused.

2

blocking access. When the security officers asked Barraza to leave and Barraza starting to wake, Barraza became "aggressive" and told them to "get the fuck out of here. You can't do shit to me. This is for the public. Go do your fucking job." Eventually Barraza got up and started to walk away, grabbing the facility's entry doormat while at the same time yelling obscenities at the security officers. V.G. watched as Barraza walked away, then he and the other officer continued to patrol and clear other individuals. As they did so, they again encountered Barraza, who was blocking another exit. Knowing of Barraza's verbal aggression and aggressive conduct, V.G. called for assistance.

V.G. and the other officer for the second time approached Barraza, who appeared to be asleep. V.G. tried to ask Barraza to move and get her attention, but Barraza did not respond. When V.G. physically tapped Barraza's foot with his own foot, Barraza became verbally aggressive, telling the officers things in the nature of, "Get the fuck away" and, "Back the fuck up." Barraza used slurs and told the officers to go back to Mexico, which they ignored.

The officers again asked Barraza to take her belongings across the street. D.H., a security supervisor, arrived and started to move Barraza's belongings. Barraza "popped up and stood up," took off her shirt, then pulled out a knife, getting into a "rushing stance" so that she "was ready to lunge forward" with the knife at hip level. Barraza had the knife extended from a folded position.

V.G. told the other officers that Barraza had a knife, then V.G. and D.H. took a step back and unholstered their pepper-type spray to counter the force of the knife and prevent a stabbing. D.H. told V.G. to give Barraza space because of the knife and because he knew there was "a high chance

3

that we are going to get cut or hurt, . . . or stabbed maybe." Barraza told the officers, "I'll fucking stab you. Come close and touch my stuff, I'll fucking stab you."[4] She moved her arm with the knife forward without extending it, as if she was getting ready, like a pose or stance. Barraza was cussing, telling the officers things such as she would "fuck [them] up" and "fight [them]." A security officer called police.

V.G., who was standing approximately three and a half to four feet away from Barraza, was afraid because a knife "can be deadly" and Barraza's demeanor, threats, and stance toward him indicated to V.G. that she was actually "going to attack" him.[5] He and D.H. stepped back because they were in fear of being in reach of a knife swing. V.G. explained he was scared because he thought he was going to get stabbed potentially. D.H. was worried about his safety and worried he might actually get stabbed; he took Barraza's statements seriously.

Once Barraza put her knife away and walked away from the officers into the street, V.G. remained concerned a stabbing could result because Barraza was still on the property, had the knife, was acting erratically, and had "rushed a couple of times like she was going to come at [them]. So it was

---

4    A responding police officer testified that V.G. told him that Barraza said, "Dude, touch me again, and I'll stab you." V.G.'s recollection was refreshed that Barraza had told the officer, "You come close, and I'll stab you." D.H. testified Barraza was saying "things in the nature of, 'Fuck you. I'm going to stab you. . . . 'If you touch me, I'm going to fucking stab you.' " Despite the differences, the testimony consistently establishes Barraza's threat to stab the security officers with her knife.

5    Specifically, V.G. testified he was afraid that Barraza would actually use the knife because of "the threats [s]he was saying—[s]he was verbally telling us that [s]he would stab us. And judging by h[er] stance—I mean, in my—how I would take somebody standing like that toward me, it's like I'm going to attack you."

still very real that somebody could get hurt." At some point, V.G. directed Barraza to police in the area.

## DISCUSSION

### I. *Standard of Review*

"In the context of a criminal case, the substantial evidence standard stems from the requirement that a criminal conviction necessitates 'proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . .' " (*People v. Mumin* (2023) 15 Cal.5th 176, 198.) Under this standard, "an appellate court retrospectively inquires whether a rational trier of fact *could have* found the defendant guilty beyond a reasonable doubt, based on all the evidence when viewed in the light most favorable to the prosecution. 'Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." ' " (*Id.* at p. 199.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Ultimately, it is within the jury's exclusive province to determine whether an inference that may be drawn from the evidence is, in fact, the only reasonable one, a determination that depends on its resolution of conflicting evidence and weighing the credibility of witnesses. '. . . [F]ounded upon the evidence, the jury not only is authorized to make any logical and reasonable deduction, but [it] is the exclusive judge of the weight and value of the inference that may be drawn by it . . . .' " (*Id.* at p. 202.)

We view the evidence in light of the whole record, and do not limit our appraisal "to isolated bits of evidence selected by the respondent." (*People v.*

5

*Dominquez* (2006) 39 Cal.4th 1141, 1153.)  We also " ' "must judge whether the evidence of each of the essential elements . . . is *substantial;* it is not enough for the respondent simply to point to 'some' evidence supporting the finding, for '[n]ot every surface conflict of evidence remains substantial in the light of other facts.' " ' " (*Ibid*.)  At the same time, we keep in mind that a trier of fact " 'may accept some parts of a witness's testimony and reject other parts.' " (*People v. Lopez* (2022) 76 Cal.App.5th 287, 290.)  " 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1004, quoting *People v. Young* (2005) 34 Cal.4th 1149, 1181.)  " 'The mere fact that there are contradictions and inconsistencies in the testimony of a witness, or that the truth of his evidence is open to suspicion, does not render it inherently improbable . . . .' " (*People v. Gaines* (2023) 93 Cal.App.5th 91, 134.)

" 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142; *People v. Montanez* (2023) 91 Cal.App.5th 245, 271.)

## II.  *Criminal Threat and Sustained Fear Element*

To establish a violation of section 422, the prosecution must prove " '(1) the defendant willfully threatened death or great bodily injury to another person; (2) the threat was made with the specific intent that it be taken as a threat, regardless of the defendant's intent to carry it out; (3) the threat was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the

6

person threatened, a gravity of purpose and an immediate prospect of execution"; (4) the threat caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) this fear was reasonable under the circumstances.' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 809, italics omitted; see also *People v. Turner* (2020) 10 Cal.5th 786, 826; *People v. George T.* (2004) 33 Cal.4th 620, 630; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228; *People v. Brugman* (2021) 62 Cal.App.5th 608, 631.) The offense "does not require an immediate ability or even an actual intention, to carry out the threat." (*People v. Holmes, McClain and Newborn*, at p. 810.)

"Case law defines 'sustained fear' as 'a period of time that extends beyond what is momentary, fleeting, or transitory.' " (*People v. Brugman*, *supra*, 62 Cal.App.5th at p. 634.) It is fear that is not " 'instantly over.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 191.) The issue involves the victim's state of mind. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) Authorities have held for purposes of section 422 that a victim's fear was sufficiently sustained when it lasted between one minute and 15 minutes. (*Brugman*, at p. 634; *Fierro*, at p. 1349 ["[w]hen one believes he [or she] is about to die, a minute is longer than 'momentary, fleeting, or transitory' "]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1153, 1155-1156 ["Fifteen minutes of fear . . . is more than sufficient to constitute 'sustained' fear for purposes of . . . section 422"].) "The victim's knowledge of [the] defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156.)

Thus, in *Brugman*, a defendant pointed a gun to the back of the victim's head telling her he was going to "smoke" her. (*People v. Brugman*, *supra*, 62 Cal.App.5th at p. 628.) At trial, the victim, with whom the

7

defendant was in a dating relationship, testified she was scared and froze during the incident; she then attempted to diffuse the situation by trying to console the defendant. (*Ibid*.) On appeal, the defendant argued the victim did not experience sustained fear because she continued to live with him after the incident, and there was no evidence she left their apartment immediately after the incident out of fear. (*Brugman*, at p. 634.) This court explained that the defendant's argument, which focused on the time period *after* the gun incident, was "flawed because a victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than 'momentary, fleeting, or transitory.'" (*Ibid*.) Observing the incident was a "drawn-out ordeal, during which [the defendant] put the gun to [the victim's] head and threatened to kill her over and over again" (*ibid*.), this court held that a "reasonable juror could conclude that while enduring this extended scenario, [the victim] did not merely experience fear that was 'momentary, fleeting, or transitory' [citation], but instead experienced sustained fear." (*Ibid*.) Further, the evidence supported a finding that in the weeks after the gun incident the victim continued to be afraid, and called police because she believed if she did not get away from the defendant, she would end up dead in the next few days. (*Id*. at p. 635.) Thus, substantial evidence supported the jury's finding that the victim experienced sustained fear as a result of the defendant's criminal threat toward her. (*Ibid*.)

III. *The Evidence Is Sufficient to Establish One or Both Security Officers Experienced Sustained Fear from Barraza's Threat to Stab Them*

Barraza contends the evidence is insufficient to support her criminal threat conviction because there is no evidence her statements caused either

V.G. or D.H. sustained fear for their safety. Barraza argues the guards' "reactions show that even though they testified they were afraid, they both immediately segued into professionally-trained work mode when confronted with the situation. Neither mentioned they felt stressed or nervous or experienced high adrenaline at the time of the incident. It was only afterward that [V.G.] testified that when he spoke with the detective a few days later that his adrenaline had come down and he could step back from the incident." Barraza points out that after she had tucked her knife back in and walked away, both guards continued to observe her and told her it was not safe to be in the street. According to Barraza, "the evidence does not show that either [guard] remained in sustained fear after the initial display of the knife."

We reject the arguments. Neither officer testified that they immediately went into "work mode" when confronted with Barraza and her knife. Barraza would have us draw an inference that their actions in response stemmed from their professional training. But such an inference is contrary to the direct testimony from V.G. that the reason the officers backed away was because they were afraid of being stabbed.[6] Nor will we infer merely from the officers' status as security guards familiar with erratic individuals on the streets that they were not in reasonable, sustained fear for their lives when Barraza stood up with a knife and threated to stab them. Their profession does not negate the possibility that they suffered sustained fear for their safety. (Accord, *People v. Wilson* (2010) 186 Cal.App.4th 789,

---

[6]    Barraza's arguments also point to contradictory evidence involving when Barraza stood up and the timing of the officers' removal of their pepper spray. But as stated, the jury was permitted to believe portions of the witnesses' statements or testimony and disregard contrary portions or other inconsistent evidence. (*People v. Lopez*, *supra*, 76 Cal.App.5th at p. 290.)

9

814 [defendant's section 422 convictions affirmed based on his threats to find a correctional officer and "blast" him when defendant would be released from prison; inmate's threats reasonably placed correctional officer in sustained fear for his life, particularly when the officer learned that defendant was actually scheduled to be paroled in ten months]; *People v. Mosley* (2007) 155 Cal.App.4th 313, 324-326 [criminal threat conviction upheld involving correctional sheriff's deputies].)

Barraza would have us focus on the officers' conduct after her threats in which they "kept a visual on [her]" and directed her to get out of the street for her own safety. But as in *Brugman, supra*, 62 Cal.App.5th 608, the argument is misplaced. We look to the time during which Barraza made her threats while brandishing the knife with the blade extended, and whether a jury could reasonably find the officers experienced a fearful state of mind that was more than momentary, fleeting, or transitory. (*Id*. at p. 634; *People v. Fierro, supra*, 180 Cal.App.4th at p. 1349.) In *Fierro*, the court explained that "a person who hears someone say, 'I will kill you . . . right now,' coupled with seeing a weapon, is quite justified" in remaining scared, even if it is only during the minute he heard the threat. (*Fierro*, at p. 1349.) In a similar manner, Barraza told the officers she was going to stab them while in a "ready-type stance" with her knife blade out. The record shows V.G. was scared that he would potentially get stabbed, and D.H. "absolutely" took the threat seriously and was worried about his safety and that he might actually get stabbed. Based on the officers' testimony that they backed away out of fear and arranged to call police, the jury reasonably could have found the element of sustained fear. Viewed in the light most favorable to the People, the record evidences reasonable, sustained fear on their part, meeting the standards of section 422.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.